No. 32,252

THE ILLINOIS BANKERS LIFE ASSURANCE COMPANY (*Plaintiff*) v. MARY A. PRICE et al., *Appellants;* H. S. ESHNAUR, *Appellee.*

(45 P. 2d 585)

Opinion filed June 8, 1935.

G. W. *Sawyer,* of Liberal, for the appellants.
*Lester Luther,* of Cimarron, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order sustaining a de-

murrer to evidence presented on a controversy between defendants in two actions, consolidated, to foreclose two mortgages on separate tracts of real property.

In October, 1929, Mary A. Price, the appellant here, who was then the owner of five adjoining quarter sections of land in Gray county, sold three of them to E. A. Shrauner for $25,120. Shrauner paid $6,000 of his own money in cash, borrowed $10,500 from the Roberts Mortgage Company, secured by a first mortgage on the land purchased, and gave this amount, less some expense items, to Mary A. Price, and also gave her a note for $9,836 secured by a second mortgage on the three quarters. About the same time Mary A. Price borrowed $7,000 from the Roberts Mortgage Company and secured the same by a first mortgage on the other two quarters, the title to which she retained. She leased these two quarters to Shrauner for farming. Later the Roberts Mortgage Company assigned both of its mortgages to the Illinois Bankers Life Assurance Company, plaintiff in this action.

By the fall of 1931 Shrauner was having difficulty paying interest, taxes and rents, and in October of that year he gave Mary A. Price his note for $639 for interest and rents then due her.

On April 21, 1932, Mary A. Price, as first party, entered into a written contract with H. S. Eshnaur, of Cullison, Kan. This recited that Eshnaur owned a described business property in Cullison encumbered by a mortgage to a building and loan association for about $700; that Mary A. Price owned the two described quarters in Gray county, on which there was a first mortgage of $7,000, and had a one-third interest in the growing wheat thereon, and that she had an interest in the other three quarters in Gray county, on which there was a first mortgage of $10,500, by virtue of her second mortgage, all five quarters being in the possession of and farmed by E. A. Shrauner, who had agreed, on certain terms, to surrender possession of the five quarters to Mary A. Price on demand. By this contract, briefly stated, the parties agreed that Mary A. Price would cause to be conveyed to H. S. Eshnaur the three quarters previously sold by her to Shrauner, and release her second mortgage thereon, and lease to him her two quarters for five years on the usual terms of farm leases, and that Eshnaur would assume and agree to pay the first mortgage of $10,500 on the three quarters, and also assume and agree to pay the first mortgage of $7,000 on the two quarters, the title to which remained in Mary A. Price, and to convey to her his

Cullison property, subject to the mortgage to the building and loan association. Mary A. Price also agreed to pay the taxes then due on the three quarters to be conveyed to Eshnaur and to pay past-due interest on the two first mortgages, being the $10,500 mortgage on the three quarters and the $7,000 mortgage on the two quarters.

After executing this contract, and on April 22, 1932, Mary A. Price and H. S. Eshnaur went to Shrauner, and at the request of Mary A. Price he and his wife executed a deed to H. S. Eshnaur for the three quarters. To induce him to do so Mary A. Price gave to him the note for $639 he had executed to her in October, 1931. This deed referred to the "first and second mortgages of record" and warranted the property to be free from liens, "except said mortgage liens of record, which grantee assumes and agrees to pay." Shrauner also executed an instrument by the terms of which he surrendered the possession of all five quarters to Eshnaur. On the same day Mary A. Price executed a farm lease for five years to Eshnaur for the two quarters, the title to which remained in her.

It appears Eshnaur went into possession of the five quarters, but that Mary A. Price did not pay the accrued taxes on the three quarters, nor the past-due interest on the two first mortgages, nor release of record her second mortgage on the three quarters, and that H. S. Eshnaur did not convey the Cullison property to her.

On August 21, 1933, the Illinois Bankers Life Assurance Company filed an action to foreclose its first mortgage of $10,500 on the three quarters, and on the same day filed a separate action to foreclose its first mortgage of $7,000 on the two quarters. Judgment was for plaintiff and a decree of foreclosure was entered in each case November 13, 1933. The real property was sold in each case December 30, 1933, to plaintiff for the full amount of its debt, taxes and costs, and the sales were confirmed February 12, 1934. No complaint of any of this is made on this appeal. At the time of the confirmations issues raised by the pleadings between defendants had not been tried, and the court had not determined in whom the right of redemption was vested, nor had it fixed the period of redemption. The two actions were consolidated in the trial court for the purposes of trying issues between defendants and determining questions respecting redemption.

We note two matters to get them out of the way: (1) In a cross petition Mary A. Price set up her second mortgage on the three quarters and procured judgment and decree foreclosing it as a second

lien; but no complaint is made of that on this appeal. (2) In the foreclosure on the two quarters the court found the right of redemption to be vested in Mary A. Price and fixed the period of redemption at eighteen months. In the foreclosure of the mortgage on the three quarters, the court determined rights of redemption. With respect to this there is some discussion in the briefs, but no question as to the correctness of any ruling of the court pertaining to redemption is presented on this appeal, hence these rulings must stand.

This appeal arises on issues presented by the cross petition filed by Mary A. Price against her codefendant, H. S. Eshnaur. In this cross petition Mary A. Price, among other things, set out her contract of April 21, 1932, with H. S. Eshnaur and alleged that after its execution the provisions by which she had agreed to pay accrued taxes on the three quarters and past-due interest on the two first mortgages were orally modified in such a way that Eshnaur assumed and agreed to pay these items. In his answer to this cross petition Eshnaur specifically denied such oral modification of the contract and denied that he ever had assumed and agreed to pay such past-due taxes and interest. This presented the issue tried in the court below. The written instruments were received in evidence. Mary A. Price testified in substance that at the time the contract was executed, April 21, and at the time she arranged with Shrauner to convey the three quarters to Eshnaur, and executed her lease to Eshnaur, on April 22, she had been informed that the taxes and interest were delinquent for one year only, and advised Eshnaur that such was her information. She told him, however, they had better go to the county seat and find out for sure about those matters; that after these instruments had been executed they went together to Cimarron, the county seat, and learned that the delinquencies were for more than one year and that they amounted to much more— nearly three times as much as she previously had been informed. She did not have the money to pay these amounts, and so advised Eshnaur.

"Q. Now, you say when you were in Cimarron, that you told Mr. Eshnaur that you couldn't raise the money to pay the taxes and interest? A. Yes.

"Q. What did Mr. Eshnaur say at that time? A. I don't remember what he said.

"Q. Did he tell you at that time he would pay it for you? A. He told me at that time, we will go through with the deal.

"Q. Then at the time you were in Cimarron you still did think there might be a chance you could raise this money? A. I even had the promise then of raising some money by the first of October.

"Q. When did it become apparent to you that you couldn't possibly raise this money? A. It was apparent that day. Told him on the way out I couldn't do it right then.

"Q. You thought you would a little later? A. I thought I would a little later.

"Q. When did you finally make up your mind that you couldn't raise the money? A. I don't know just how soon that was. It was some months later that I continued trying to raise money; up to the first of November, I expect."

They then went to Liberal, where Mrs. Price thought she might get the money, but she was unable to do so. She testified she then told Eshnaur:

"I said, there is nothing I can do; let it drop so far as I am concerned; nothing I can do at the present time. Nothing I can do.

"Q. Did you specifically agree on anything relative to any part of this— these taxes at that time there in Liberal—orally between you and Eshnaur as to who should pay them and how, after you returned from Cimarron? A. No, we didn't only as he stated.

"Q. What do you mean, as he stated? A. In this, he said we will—we will go ahead and make the deed as I must have a place to live. I have wheat, I will take care of this—in storage—I will take care of it some way now. I said, 'I will make it right some way just as quick as I can in some way.'

"Q. Did he have anything to—have any growing crop? A. He said he had a wheat crop coming."

A few days later, perhaps April 26, they talked about this with Mr. Roberts, of the Roberts Mortgage Company. On that occasion Eshnaur offered to give her a deed to the land he had received from Shrauner and to cancel the five-year lease on the balance, but she refused this offer.

"Q. You were still discussing the terms of the deal between you at that time? A. Yes.

"Q. Trying to figure out some deal that would be satisfactory to both of you? A. Certainly.

"Q. So that you hadn't made any contract up to that time that was satisfactory to both of you? A. Only what is had in writing.

"Q. How long after the contract in writing was made was it before you had an oral contract that was satisfactory to both of you? A. I don't think we ever did get one really that was satisfactory.

"Q. That is you never did have any contract orally on which you both agreed, did you? A. I claim still that if he took up some of these taxes, then I would do something and he always refused to pay any money on the taxes; that is what held me up all the time.

"Q. Then you never did, Mrs. Price, have a satisfactory oral arrangement with Mr. Eshnaur, did you? A. I never did satisfactorily; because he failed to pay the taxes as he agreed to."

This is the only testimony offered in support of the alleged oral modification of the written agreement. Clearly it was insufficient to establish the allegation. It was not error to sustain a demurrer to the evidence.

The judgment of the court below is affirmed.