IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 91-2807

Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS QUIROZ-CORTEZ,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(April 28, 1992)

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Jesus Quiroz-Cortez appeals his conviction for conspiracy to possess over 50 kilograms of marijuana with intent to distribute and aiding and abetting the substantive offense. Quiroz-Cortez raises only one point of error--that the district court violated Fed. R. Crim. P. 24(c) in replacing a juror who was hard of hearing with an alternate juror after the jury had begun its deliberations and the alternate juror had been dismissed. We find that this violation of Fed. R. Crim. P. 24(c) was harmless error and affirm.

I.

The case was tried on May 9, 1991. On May 10, the district court dismissed the two alternate jurors, thanked them for their service and told them that they "cannot discuss the case with anybody, including yourselves until you know for a fact that the jury verdict has been returned." The two alternate jurors then left the courtroom.

The jury retired to deliberate. About forty-five minutes later, the jurors broke for lunch. Soon after the jurors reconvened to continue their deliberations, the district court learned that a juror, Jose Borrego, was hard of hearing and may not have heard all of the trial testimony. After questioning this juror in the presence of counsel, the court asked whether the parties wanted him to excuse Borrego and replace him with one of the dismissed alternate jurors. Both parties stated that they wished to have Borrego excused.

The district court offered to call the first alternate juror to replace Borrego. The prosecution had no objection. However, the defense counsel stated:

> "I just--is there--would there be any--I don't know. The
> question in my mind is that person is now out of the--out
> of the building--out of the marshal's control. . . ."

The district court offered to question the alternate juror as to whether she had discussed the case outside the courtroom, noting that the alternate juror was no more exposed to outside influence than the jurors who left the courtroom to go to lunch.

2

The defense counsel, however, stated that the "best alternative for me would be to make--to ask for a mistrial, Your Honor." The defense counsel declined to consent to an eleven person jury. The district court replied that "a motion for a mistrial is denied," to which the defense counsel stated, "[t]hen I would settle for the first alternate [juror]."

The district court called the jury into the courtroom and explained that Borrego had been excused because he may not have heard all the testimony and that the first alternate would replace Borrego. The district court told the jury to "quit talking about the case . . . until we bring the alternate in." The district court further instructed the jury that

> "you all are going to have to start from the start with regard to deliberations because she [the alternate juror] obviously was not present to hear what you had deliberated. So, you all will have to start all over again with regards to your deliberations. You haven't deliberated that long as far as time, but you will have to start all over again so that she can have the benefit of the entire deliberations."

After these instructions, the district court sent the jury back into the jury room. When Ms. Maria Alfaro, the first alternate juror, returned to the courtroom, the district court asked her twice whether she had "discussed [the case] with anybody at all" since she was released. Ms. Alfaro responded that she had not. The district court then instructed Ms. Alfaro that the jury would have "to start deliberating again with you present, so that you will have the benefit of hearing everything that was said and so, I'm going to ask you to deliberate in the case. . . . And I have

3

told them to start from the start all over again so that you can have the benefit of everything that was being discussed."

After giving these instructions to Ms. Alfaro, the district court called the jury back into the courtroom and told them that Ms. Alfaro was "ready to start deliberating with you all" and that the jury should "go ahead and start from the start with regards to your deliberations."  The district court reminded the jury for a second time that Ms. Alfaro "does have to have benefit of everything that you've conducted so far, so go ahead and start from the start with regards to your deliberations."

After an hour and a half of further deliberations, the jury reached a verdict, finding Quiroz-Cortez guilty of conspiracy to possess marijuana with intent to distribute and aiding and abetting the substantive offense.

## II.

Quiroz-Cortez contends on appeal that the district court violated Fed. R. Crim. P. 24(c) by replacing a juror with an alternate juror after the jury had begun deliberations. Rule 24(c) provides in relevant part that "alternate jurors in the order in which they are called shall replace jurors who, <u>prior to the time the jury retires to consider its verdict</u>, become or are found to be unable or disqualified to perform, their duties." (emphasis added) The rule further provides that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

4

Rule 24 (c) does not explicitly prohibit substitution of alternate jurors after the jury begins its deliberations. However, the rule's language and the weight of authority indicates that Rule 24(c) forbids such a practice. United States v. Huntress, Slip Op. 91-5626, at 3543 (5th Cir. March 18, 1992); United States v. Josefik, 753 F.2d 585, 587 (7th Cir. 1985); United States v. Hillard, 701 F.2d 1052, 1057-58 (2d Cir. 1983).

An alternate juror replacing a regular juror after the jury has commenced its deliberations may be unable to participate equally with the other jurors, because he will lack the benefit of the prior deliberations. There is a danger that the other jurors will have "already formulated positions or viewpoints or opinions" in the absence of the alternate juror and then pressure the newcomer into passively ratifying this predetermined verdict, thus denying the defendant the right to consideration of the case by twelve jurors. United States v. Phillips, 664 F.2d 971, 995-96 (5th Cir. 1981); 2 C. Wright, Federal Practice and Procedure, § 388 at 392-93 (1982).

Rather than replace a regular juror with an alternative juror after the jury has begun its deliberations, the proper procedure is for the district court to proceed with an eleven-person jury. Under Fed. R. Civ. P. 23(b) as amended in 1983, the district court has discretion to allow an eleven-person jury to return a verdict, if "the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict." This court has held that the district court is required to "allow an eleven-

member jury to proceed to verdict or grant mistrial," if a regular juror has been dismissed after deliberations have begun. Huntress, at 3543.

If the defendant suffered no prejudice from the late substitution of an alternate juror, the error is harmless and the conviction stands. Huntress, at 3544; United States v. Helms, 897 F.2d 1293, 1299 (5th Cir. 1990); Phillips, 664 F.2d at 993. We evaluate prejudice to the defendant by examining, among other things, the length of the jury's deliberations before and after substitution of the alternate and the district court's instructions to the jury upon substitution charging the jury to begin its deliberations anew. Id. at 995-96. In doing so, we keep in mind that defendant was not entitled to twelve jurors.

There is little risk of prejudice from the late substitution in this case. The jury had deliberated for only forty-five minutes before the substitution. The judge substituted only after repeatedly and explicitly instructing the jury to "start all over again with regards to your deliberations" because the alternative juror "need[s] to have benefit of everything you've conducted so far." The new jury, including the alternate juror, then deliberated for an hour and a half before reaching a verdict.

The alternate juror's exposure to influences outside the courtroom was also minimal. Before dismissing the alternate juror, the district court carefully instructed the alternate juror not to discuss the case. The alternate juror twice told the court that she had complied with the court's instructions by not discussing

6

the case outside the courtroom.  We find that the defendant suffered no prejudice from the alternate juror's brief absence from the courtroom and the error in the late substitution was harmless. United States v. Barone, 83 F.R.D. 565, 573 (S.D. Fla. 1979).

We have found harmless error in cases with a greater risk of prejudice.  In Huntress, for instance, the jury had deliberated for a whole day before the district court substituted the alternate juror, and the alternate juror admitted that she had spoken about the case with her employer.  We held that the substitution, while error, was not prejudicial, given the district court's careful questioning of the alternate juror and the alternate juror's assurance that she did not discuss the substance of the evidence. Huntress, at 3545.

AFFIRMED.