[No. B119054. Second Dist., Div. Three. Sept. 22, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MERRICK JOSE MOORE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are those portions enclosed within double brackets, [[ ]].

**COUNSEL**

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

William T. Harter and Margaret E. Maxwell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant, Merrick Jose Moore, appeals from the judgment entered following his conviction, by jury trial, for unlawful driving or taking of a vehicle, carjacking, two counts of kidnapping, burglary, and two counts of kidnapping during the commission of a carjacking, with enhancements for prior serious felony convictions and victims under the age of 14 (Veh. Code, § 10851; Pen. Code, §§ 215, 207, 459, 209.5, 667, subds. (a)-(i), 667.9, subd. (b)).[1] Sentenced to a state prison term of life plus 37 years to life, Moore raises trial and sentencing errors.

The judgment is affirmed as modified.

### BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established the following.

1. *Prosecution evidence.*

On March 13, 1997, Mariza Manalo lived in a house located at 2145 Anson Way in West Covina. Around 7:15 a.m., Manalo put her two sons, six-year-old Bryan and three-year-old Brandon, inside her burgundy 1988 Toyota Tercel. The car was parked inside the attached garage and the garage door was up. Bryan was sitting in the front passenger seat, and Brandon was in the back in a children's car seat. Manalo started the car's engine, but then went back into the house to get a tissue from the bathroom. Various items, including a tote bag, shoes and a bottle of lotion, were in the Tercel. A blue Calvin Klein jacket with maroon sleeves was in the trunk.

While she was still inside the bathroom, Manalo saw defendant Moore's reflection in her bathroom mirror. Moore was walking outside near the garage. By the time Manalo moved to the door of the garage, Moore was sitting in the driver's seat and backing the Tercel out of the driveway. Manalo screamed and ran into the street. She saw Moore driving her car "down the hill." Manalo went back inside and called 911. While she was still on the telephone, several neighbors brought Bryan back home.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Bryan at first thought Moore was simply backing the car up. But "then [Moore] drove away" and that's when Bryan realized Moore was taking him somewhere. Bryan called for his mother and Moore told him six to ten times to "shut up." When Moore slowed down at one point, Bryan jumped out of the moving car. He fell on his jacket and on his backpack and thereby escaped injury. Bryan then "ran up the hill" because he saw "two girls walking there." He approached the girls and told them what had happened. They took him home.

Stephannie Torres, who was 11 years old at the time of trial, testified she was walking to the bus stop with her aunt and her sister when she saw Moore jogging. Before they reached the bus stop, Torres heard a scream. "A car came rushing down" the street "and a kid jumped out and started running." They went to help him.

Around 8:45 a.m. that morning, Martin Phillips noticed a dark reddish-colored car parked on Mesa Drive. He saw a child in a car seat in the rear of the vehicle. The child was unattended. Sometime before 8:30 a.m., Heidi Morton, who lived on Mesa Drive, saw a dark red sedan pull up across the street. Morton went to get her keys, and did not see anyone get out of the car. When she returned to her kitchen window, she saw a man walking down the street away from the car. She saw another red car drive past the man, turn around, and pick him up. As Morton pulled out of her driveway, she saw a child sitting in the back of the red sedan.

Around noon, Phillips heard a radio broadcast about a missing child and a stolen car in West Covina. He went back to the reddish-colored car. The child was still inside. Phillips called 911. Meanwhile, Morton had returned home for lunch. As she was returning to work, she saw that the car with the child was still parked on the street. Morton drove back to the car. When she reached it, Phillips was already there.

Around 7:45 a.m. that same day, Antonio Dunford saw Moore outside his apartment complex in West Covina. Moore rode with him while Dunford drove one of his daughters to school. They arrived at the school between 7:45 a.m. and 8:00 a.m. They then returned to Dunford's apartment. Dunford let Moore stay in his apartment while he drove his other daughter to school. Moore was gone when Dunford returned.

Around 8:13 a.m., Michael Young drove his children to Mesa Elementary School.[2] After he dropped them, Young was going down Mesa Drive when he spotted Moore walking along. Young, who was driving a red 1988 Pontiac, offered him a ride. Moore had a small, dark-colored gym bag with him. Young drove Moore to the Eastland Shopping Center, dropping him off between 8:30 and 8:40 a.m. Young went home. About an hour later, Moore came over to Young's apartment and asked to borrow some pants and a shirt. Young gave Moore some clothes. Moore then returned to Dunford's apartment between 8:45 and 9:30 a.m., about 15 to 30 minutes after Dunford had returned from dropping his younger daughter off at school.

The police caught up with Moore at Dunford's apartment. Dunford told police Moore had arrived earlier that morning. Moore told police he had spent the night at Dunford's apartment and had never left. Dunford said Moore was lying. Moore was arrested. Police found a two-tone, maroon and blue Calvin Klein jacket on the couch and a black scarf under the couch cushions where Dunford said Moore had been sitting. Later, Dunford gave police a bottle of lotion he said Moore had left in his apartment.

A shoe print discovered inside Manalo's garage had been made by one of the Converse tennis shoes Moore was wearing when he was arrested.

The distance between Manalo's house and where the Tercel was ultimately found was four and one-half miles.

2. *Defense evidence.*

According to Brenda Hubbard, the defendant's mother, Moore (who lived with her) left home around 7:15 a.m. that day. Around 7:45 a.m., Moore telephoned and said he was calling from Dunford's apartment. About 7:15 a.m., Dion Johnson saw Moore coming down the street from his apartment building. Moore asked for a ride to an apartment building on Citrus.

Moore testified on his own behalf. When he left his mother's house that morning around 7:15 a.m., he saw Johnson getting into a car. When Johnson and his companion drove down the street, Moore flagged them down. Moore asked them to take him to Dunford's house. Moore reached Dunford's apartment complex around 7:45 a.m.

Moore ran into Dunford outside the apartment. Moore then waited inside the apartment while Dunford took his daughter to school. Dunford returned

---

[2]Young lived at 320 South Citrus, apartment No. 221. Dunford lived in apartment No. 227 of the same complex.

15 minutes later. Moore stayed at Dunford's apartment until he was arrested. Young did not pick him up or drive him to the apartment complex. Moore did not ask Young for a pair of pants on March 13. Moore was wearing a pair of black Converse tennis shoes which were taken by the police.

CONTENTIONS

The trial court erred by denying Moore's motion for self-representation.

Section 209.5 (kidnap during carjacking) is unconstitutional, and the trial court misinstructed the jury regarding this offense.

The kidnapping and carjacking convictions must be reversed because they are lesser included offenses of section 209.5.

The trial court erred by holding the bifurcated priors trial in Moore's absence.

The trial court erred by failing to instruct the jury with CALJIC No. 2.72 (corpus delicti must be proved independently of confession) during the priors trial.

The trial court erred by imposing two consecutive prior serious felony conviction enhancements under section 667, subdivision (a).

The trial court erred by miscalculating Moore's presentence custody credits.

DISCUSSION

[[1. *Faretta request properly denied.*]]*

2. *Section 209.5 not unconstitutionally vague and instructions were proper.*

 Moore contends section 209.5 (kidnapping during the commission of a carjacking) is unconstitutionally vague. He also contends the standard jury instruction defining this offense (CALJIC No. 9.54.1) is defective. We disagree.

Section 209.5 provides, in pertinent part: "(a) Any person who, during the commission of a carjacking and in order to facilitate the commission of the

*See footnote, *ante,* page 37.

carjacking, kidnaps another person who is not a principal in the commission of the carjacking shall be punished by imprisonment in the state prison for life with the possibility of parole. [¶] (b) This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." ' Moore argues the statute is unconstitutional because the term "vicinity" contained in the requirement that the victim be moved "a substantial distance from the vicinity of the carjacking" is impermissibly vague.

 "The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of 'life, liberty, or property without due process of law,' as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7). Under both Constitutions, due process of law in this context requires two elements: a criminal statute must ' "be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." ' [Citations.]" (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 567 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Several factors are involved: " ' "First . . . we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' [Citations.]" (*Id.,* at pp. 567-568.)

 "The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Williams* v. *Garcetti, supra,* 5 Cal.4th at p. 568.) However, "to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that 'the law is impermissibly vague *in all of its applications.*' [Citation.]" (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753

P.2d 585]; see also *People* v. *McKelvey* (1991) 230 Cal.App.3d 399, 403 [281 Cal.Rptr. 359] ["In reviewing a statute challenged for vagueness, courts focus upon defendant's act rather than hypothetical or conceivable acts falling within the statute"].) "[A] statute will not be held void for vagueness at the behest of a defendant whose conduct falls clearly within its bounds. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 . . . .)" (*People* v. *Camillo* (1988) 198 Cal.App.3d 981, 996 [244 Cal.Rptr. 286].)

" 'The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. [Citation.]' " (*People* v. *Heilman* (1994) 25 Cal.App.4th 391, 400 [30 Cal.Rptr.2d 422] ["repeatedly" not unconstitutionally vague].) "A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute." (*E. W. Bliss Co.* v. *Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn. 2 [258 Cal.Rptr. 783]; see *Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 365 [150 Cal.Rptr. 216] [dictionary used to define "failure" and "inability" in DUI-related statute].)

In *People* v. *Ervin* (1997) 53 Cal.App.4th 1323 [62 Cal.Rptr.2d 231], this court rejected a vagueness challenge to the phrase "in the vicinity of the automated teller machine" as used in section 212.5, subdivision (b), which proscribes the robbery of an automated teller machine (ATM) user who is still "in the vicinity" of the ATM. As we explained: "The dictionary defines 'vicinity' as: the quality or state of being near, proximity; a surrounding area or district; neighborhood. (Webster's Collegiate Dict. (10th ed. 1995) p. 1316.) The similar phrase 'in or about' withstood a vagueness challenge in *People* v. *Superior Court* (*Caswell*) (1988) 46 Cal.3d 381. . . . In *Caswell*, defendants were charged with loitering ' "in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act." ' (*Id.* at p. 388.) Our Supreme Court explained the phrase 'in or about any toilet open to the public' was not 'misleading or cryptic,' and that it 'is sufficiently definite such that no reasonable person could misunderstand its meaning.' (*Id.* at p. 391.) The phrase 'in the vicinity of an automated teller machine' provides sufficiently definite notice that no reasonable person could misunderstand its meaning. . . . '[A] statute is not void simply because there may be difficulty in determining whether some marginal or hypothetical act is covered by its language.' [Citation.]" (*People* v. *Ervin, supra,* 53 Cal.App.4th at p. 1329.)

"The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed, a wide

spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the 'reasonable or prudent' speed to drive his car in the circumstances (Veh. Code, § 22350), while another may be incarcerated in state prison on a conviction of wilful homicide if he misjudges the 'reasonable' amount of force he may use in repelling an assault [citation]. As the Supreme Court said in *Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153], 'There is no formula for the determination of reasonableness.' Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1128-1129 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

■ The phrase "the vicinity of the carjacking" is no more vague in general than the phrase "the vicinity of the ATM." The carjacking here took place when Moore got into Manalo's car and backed it out of the garage. As the People argue: "Considering the asportation requirements of section 209.5, subdivision (b) as interrelated rather than mutually exclusive, the 'vicinity' of the carjacking logically and reasonably included the Manalo's garage where all the elements of the carjacking were completed."

■ Moore contends the trial court erred by giving the jury CALJIC No. 9.54.1, which in defining the asportation element of section 209.5 says that "a substantial distance from the vicinity of the carjacking 'is a distance more than slight, brief, or trivial.'" He argues this instruction is inadequate. "Because the words 'substantial distance' by themselves mean 'a distance more than slight, brief or trivial,' the phrase 'substantial distance *from the vicinity*' means 'a distance more than slight, brief or trivial *from the vicinity*.'" Moore asks, rhetorically, "How far must a person travel in a car before he travels beyond the 'vicinity' of a carjacking? Or, more precisely, how far must the person travel before he travels a 'substantial distance' beyond the 'vicinity' of the carjacking?"

We agree with the People, however, that "[n]othing in section 209.5 suggests the Legislature intended a meaning as esoteric as appellant advocates. . . . [T]he phrase 'a substantial distance from the vicinity of the carjacking' did not require the jury to determine the outside boundary of the 'vicinity of the carjacking' and then calculate whether or not the victim had been moved a substantial distance from that point. Instead, . . . any point within the 'vicinity' of the carjacking was a sufficient starting point for the calculation of whether the victim was moved a 'substantial distance.'" That is, once the elements of carjacking have been satisfied, there needs to be asportation only for "a substantial distance" as defined in simple kidnapping.

[[3.-8.]]*

## DISPOSITION

The judgment is modified as follows: the conviction on count 3 for carjacking is vacated; the convictions on counts 4 and 5 for simple kidnapping are vacated; one of the section 667, subdivision (a), enhancements is vacated. In addition, Moore is to be credited with an additional three days of actual presentence custody. As modified, the judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment accordingly.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 21, 1999.

*See footnote, *ante*, page 37.