2003 WY 99

**Diego ALCALDE, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 01–188.**

Supreme Court of Wyoming.

Aug. 22, 2003.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Nancy D. Conrad, Student Intern. Argument by Ms. Conrad.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Diego Olmos Alcalde (Alcalde) appeals his conviction for kidnapping in violation of Wyo. Stat. Ann. §§ 6–2–201(a)(iii), (b)(i) and (c). Alcalde claims error in the substitution of an alternate juror after deliberation had commenced and challenges the constitutionality of the kidnapping statute, § 6–2–201, alleging it is unconstitutionally vague, both facially and as applied in this case. We reject Alcalde's claims that § 6–2–201 is unconstitutional. However, we conclude that the substitution of the alternate juror after deliberations had begun constituted prejudicial error. Accordingly, we reverse Alcalde's conviction and remand for a new trial.

## ISSUES

[¶ 2] Alcalde frames his two issues on appeal as follows:

### ISSUE I

Whether the district court committed reversible error when it substituted a discharged alternate juror for a regular juror after deliberations had commenced for a number of hours?

### ISSUE II

Is W.S. § 6–2–201 is [*sic*] unconstitutionally vague facially and as applied to the facts in the case, denying [Alcalde] due process of law, because it provides no standard of conduct or notice of forbidden conduct and it allows for arbitrary and discriminatory enforcement?

The State sets forth the issues before us in the following language:

I. Did the district court commit reversible error when it substituted an alternate juror for a regular juror after deliberations had begun?

II. Is Wyo. Stat. § 6–2–201 constitutionally vague, either facially or as applied to [Alcalde's] conduct?

### FACTS

[¶ 3] Early on the morning of August 10, 2000, Alcalde followed a young woman to her apartment parking lot. After parking his car in such a way that she could not move her vehicle, Alcalde approached her under the guise of being lost. The woman remained sitting in her car but with her legs out the open driver's side door. While the woman was attempting to give Alcalde directions, he lunged and pinned her inside the car. Alcalde began choking her, which prevented her from crying out. The woman was, however, able to reach the car horn and sound it twice. Complaining that she "just had to do that," Alcalde forced the woman out of the car and dragged her about 15 to 20 feet to a privacy fence. After approximately a minute, Alcalde abruptly stopped the assault and returned to the apartment parking lot where he was confronted by the victim's brother and sister, who had come out of their apartment upon hearing the car horn. Meanwhile, the victim had come back around the fence

1. **§ 6–2–201. Kidnapping; penalties; effect of release of victim.**

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:
. . . .
(iii) Inflict bodily injury on or to terrorize the victim or another.

whereupon she cried for help. The victim's father, who had just come out of the apartment, chased after Alcalde, who managed to get into his car and escape the scene. Alcalde was apprehended shortly thereafter by the police and identified as the assailant by the victim, her brother, and father.

[¶ 4] Alcalde was charged with one count of kidnapping in violation of Wyo. Stat. Ann. §§ 6–2–201(a)(iii), (b)(i) and (c) (LexisNexis 2003).[1] The matter went before a jury for trial and after the parties had presented their closing arguments, the district court dismissed the alternate juror:

Earlier when we drew the name of the alternate, that was done so that if somebody in the course of the trial became ill or disabled or somehow unable to finish, we'd have an alternate juror to fill that place. Happily, we've arrived at this point without any so misfortunes. We'll now identify and excuse the alternate.

The alternate should understand that until the verdict is received, there's always the possibility that the alternate could be called upon, so the instruction is not to discuss the case remaining until the alternate hears that there is a verdict.

Who is the alternate, [name of juror]? [The alternate], you are excused. Now, depending on your point of view, you don't get to or you don't have to help with deliberations. Thank you very much for participating, and we will be in recess until we've heard that there's a verdict.

During deliberations, the jury sent a series of notes requesting clarification of the terms "vicinity" and "confined" as used in the kidnapping statute and whether or not a verdict had to be unanimous. After consulting with counsel for both parties, the court sent a stipulated reply to the jury:

(b) A removal or confinement is unlawful if it is accomplished:
(i) By force, threat or deception; . . . .
(c) If the defendant voluntarily releases the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not more than twenty (20) years.

The answer to the first question is yes. Any verdict must be unanimous.

"Vicinity" and "confined" are the words of the statute. The elements listed are taken from the statute, using the parts that could apply to the evidence in this case. The other portions could not apply.

I'm sorry, but, again, we cannot further define or provide a dictionary.

The court excused the jury over defense's objection when a verdict had not been reached by the end of the first day of deliberations.

[¶ 5] The next morning, the court was notified that a juror sought to be excused from the panel for medical reasons. A conference was held in chambers with the court, counsel for both parties, and the juror. The juror's doctor appeared by phone. After the court and the parties' counsel questioned the juror and his doctor, the court dismissed the juror because of a serious medical condition. The court then indicated that the dismissed juror would be replaced with the alternate juror, who was called into the conference. Defense counsel objected to replacing the excused juror with the alternate but the court overruled him. The alternate was questioned as to whether or not he had discussed the case with anyone since his dismissal the day before. After satisfying itself that he had not discussed the case, the district court directed the alternate to join the jury, which would continue its deliberations. Approximately 50 minutes later, the jury delivered a guilty verdict.

## DISCUSSION

*I. Substitution of Alternate Juror*

[¶ 6] Initially, Alcalde contends that a district court lacks the authority to substitute an alternate juror for a regular juror once deliberations have commenced. Pursuant to W.R.Cr.P. 24(e), Alcalde argues that it is mandatory for the district court to discharge any alternate jurors when the jury retires to consider a verdict. In an alternative argument, Alcalde contends that even if an alternate juror can be substituted for a regular juror after deliberations have begun, the district court in this case failed to take adequate procedural safeguards to protect the deliberative process.

[¶ 7] We begin our analysis with the language from the relevant portion of W.R.Cr.P. 24(e) (emphasis added):

*Alternate jurors.*—The court may direct that not more than six jurors in addition to the regular jury be called and impanelled [*sic*] to sit as alternate jurors. **Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.** Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. **An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.** Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impanelled, two peremptory challenges if three or four alternate jurors are to be impanelled, and three peremptory challenges if five or six alternate jurors are to be impanelled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by these rules may not be used against an alternate juror.

Alcalde cites the use of the mandatory word "shall" to support his contention that an alternate can only replace a regular juror prior to the time the jury retires to deliberate and that once the jury does retire, the alternate must be discharged.

[¶ 8] Prior to 1999 the corresponding federal rule was identical to Wyoming's. *See* Fed.R.Crim.P. 24(c) (1999). In those circumstances, we have generally looked to federal case law for guidance in the interpretation of the rules of criminal procedure. *Brock v. State*, 981 P.2d 465 (Wyo.1999). The federal courts adopted the view that the substitution of an alternate juror during mid-deliberations violated the plain language of

the rule. *United States v. Quiroz–Cortez,* 960 F.2d 418, 420 (5th Cir.1992). However, the federal courts applied a harmless error standard and would reverse a conviction only if the defendant had suffered prejudice by the substitution. *Id.* The federal appellate courts evaluated prejudice to the defendant by examining, "among other things, the length of the jury's deliberations before and after substitution of the alternate and the district court's instructions to the jury upon substitution charging the jury to begin its deliberations anew." *Id.* (citing *United States v. Phillips,* 664 F.2d 971 at 995–96 (5th Cir.1981)). Consideration was also given to whether or not the trial court had ensured that the alternate juror had not discussed the case with anyone nor been exposed to extrinsic information about the case in the interim between his discharge and the time of substitution.[2] *Quiroz–Cortez,* 960 F.2d at 420; *United States v. Guevara,* 823 F.2d 446, 448 (11th Cir.1987).

[¶ 9] The majority of the state courts to consider the issue have adopted the federal approach. *See, e.g., State v. Sanchez,* 2000–NMSC–021, ¶¶ 16–22, 129 N.M. 284, 6 P.3d 486, ¶¶ 16–22 (2000) (collecting cases); and generally, David B. Sweet, Annotation, *Propriety, Under State Statute or Court Rule, of Substituting State Trial Juror With Alternate After Case Has Been Submitted to Jury,* 88 A.L.R.4th 711 (1991). In *People v. Burnette,* 775 P.2d 583 (Colo.1989), the Colorado Supreme Court held that recalling a discharged alternate to replace a regular juror after deliberations have begun violated Colorado Rule of Criminal Procedure 24(e), which at that time was identical to the Wyoming Rule at issue here. *Id.* at 586–87. The Colorado court noted the potential prejudices inherent when substitution of a regular juror occurs in mid-deliberation:

> The potential for prejudice occasioned by a deviation from the mandatory requirements of Crim.P. 24(e) is great. Where an alternate juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant's guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his views and to persuade others.... Moreover, the new juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision.... Nor will the new juror have had the benefit of the unavailable juror's views.... Finally, a lone juror who cannot in good conscience vote for conviction might be under great pressure to feign illness in order to place the burden of decision on an alternate.

*Burnette,* 775 P.2d at 588 (citations and footnote omitted). While noting that the substitution raises a presumption of prejudice to the defendant's right to a fair trial, the court held that the presumption could be overcome by a showing that the trial court took adequate procedural precautions to obviate the danger of prejudice to the defendant. *Id.* at 587–88. In its analysis, the Colorado court cited the following safeguards: (1) whether the alternate juror was adequately instructed upon discharge not to discuss the case and avoid extrinsic information about the case that could influence him; (2) whether the alternate was questioned about his activities during the period from his discharge to recall and his present ability to serve on the jury; and (3) whether the remaining regular jury members had been instructed to recommence deliberations anew and whether they would be capable of disregarding their previous deliberations and any opinions formed during those deliberations. *Id.* at 590–91.

---

2. In 1999 the federal rule 24(c) was amended to eliminate references to pre-submission substitution and to the discharge of alternate jurors when deliberations have commenced. The federal rule now provides:

> (3) **Retention of Alternate Jurors.** When the jury retires to consider the verdict, the court in its discretion may retain the alternate jurors during deliberations. If the court decides to retain the alternate jurors, it shall ensure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If an alternate replaces a juror after deliberations have begun, the court shall instruct the jury to begin its deliberations anew.

Fed.R.Crim.P. 24(c)(3) (2002 Second Rev. Ed.).

[¶ 10] We concur with the authorities noted above and hold that the plain language of W.R.Cr.P. 24(e) does not permit the substitution of an alternate juror for a regular juror once deliberations have commenced. The substitution of an alternate juror in those circumstances raises a presumption of prejudice to a defendant that can, however, be rebutted upon a showing that adequate procedural safeguards were undertaken by the trial court to ensure that the defendant received a fair trial. Specifically, the trial court must: (1) instruct the alternate upon discharge that his oath is still applicable and until a verdict has been rendered and the regular jury discharged, he must refrain from discussing the case with anyone and avoid extrinsic information that may affect his ability to impartially judge the case; (2) upon recall, inquire on the record whether the alternate juror did, in fact, comply with the court's instructions; (3) instruct the reconstituted jury to begin deliberations anew; and (4) inquire on the record whether the remaining members of the original jury can ignore the previous deliberations and set aside any opinions formed during them. If the trial court cannot establish that all of these safeguards are met, then the court may not substitute the alternate, and the matter may proceed pursuant to W.R.Cr.P. 23(b); otherwise, a mistrial may be declared.

[¶ 11] In this case, the record clearly shows that adequate procedural safeguards were not taken. The district court properly instructed the alternate before discharging him and, upon recall, inquired whether he had complied with those instructions. The district court then sent the alternate into the jury room. The reconstituted jury was not instructed to begin deliberations anew. Nor was there an inquiry as to whether or not the remaining regular jurors could set aside their previous deliberations and any opinions formed during those deliberations. This failure raises the potential for prejudice noted by the Colorado Supreme Court. The potential for prejudice in this situation is evidenced by the fact that the original jury deliberated for the previous afternoon without reaching a verdict but managed to reach a verdict with the participation of the alternate juror in less than an hour. Accordingly, we must reverse Alcalde's conviction and remand for a possible new trial.

## II. Constitutionality of Wyo. Stat. Ann. § 6-2-201

[¶ 12] In his second issue, Alcalde challenged the constitutionality of the kidnapping statute, §§ 6-2-201(a)(iii), (b)(i) and (c), claiming that it is unconstitutionally vague on its face and as applied to him. Although we have reversed Alcalde's conviction on his other claim, we will address this issue because of the possibility of a new trial upon remand.

[¶ 13] We apply the following analysis to claims of facial vagueness:

A statute may be challenged for vagueness "on its face" or as applied to particular conduct. When a statute is challenged for vagueness on its face, the court examines the statute not only in light of the complainant's conduct, but also as it might be applied in other situations. See *Schwartzmiller v. Gardner*, 752 F.2d 1341 (9th Cir.1984). Facial review is not appropriate in all cases.

"[F]acial vagueness review is not common because ordinary canons of judicial restraint do not permit a party whose particular conduct is adequately described by a criminal statute to 'attack [the statute] because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.'" (Emphasis omitted). *Id.* at 1346 (quoting *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974)).

This principle is sometimes described in terms of standing. *Parker v. Levy, supra* 94 S.Ct. at 2561; *State v. Hegge*, 89 Wash.2d 584, 574 P.2d 386, 389 (1978).

The standing requirement is relaxed when a statute reaches "a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Kolender v. Lawson*, [461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)]. The requirement is also relaxed when a statute

is shown to be vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Parker v. Levy, supra* 94 S.Ct. at 2561 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)). See also *Schwartzmiller v. Gardner, supra* 752 F.2d 1341. *Griego v. State*, 761 P.2d 973, 975 (Wyo.1988). "A 'facial challenge' [to a statute] is available in only two situations: (1) when the statute reaches a substantial amount of constitutionally protected conduct, and (2) when the statute is shown to specify no standard of conduct at all." *Ochoa v. State*, 848 P.2d 1359, 1363 (Wyo.1993). In regard to "as applied" challenges, we have said:

> In making this determination we must decide whether the statute provides sufficient notice to a person of ordinary intelligence that appellant's conduct was illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement. When evaluating a statute to determine whether it provides sufficient notice, we must again consider not only the statutory language but also any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct. *Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977); *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

*Griego*, 761 P.2d at 976.

[¶ 14] The language that Alcalde challenges appears in subsection (a) of the kidnapping statute, Wyo. Stat. Ann. § 6–2–201:

> (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, . . . [.]

Specifically, Alcalde claims that the words "vicinity" and "confines" are vague and ambiguous. He contends that the statute does not put a person of ordinary intelligence on notice that "merely forcefully moving someone only 20 feet and for only under 30 seconds could result in a felony kidnapping conviction." Thus, he claims the statute does not specify a standard of conduct. To support his contention, Alcalde cites the fact that the jury in his case requested a definition of "vicinity" and "confine" from the court three different times. Accordingly, he concludes that the jury must have found the terms ambiguous and vague.

[¶ 15] There is a strong presumption that a statute is constitutional and any doubt is resolved in favor of constitutionality. *Reiter v. State*, 2001 WY 116, ¶ 7, 36 P.3d 586, ¶ 7 (Wyo.2001). We begin with the words of the statute that Alcalde claims are ambiguous or vague. The ordinary meanings of the words are:

> **Vicinity**—**1.** the quality or state of being near: proximity **2:** a surrounding area or district: neighborhood
>
> **Confine**—**1. a:** to hold within a location **b:** imprison **2:** to keep within limits

Merriam–Webster's Collegiate Dictionary 1316 and 242 (10th ed.1998). In plain terms, the statute prohibits a person from unlawfully removing another from his place of residence or business or from the "surrounding area or district" where he was at the time of the removal, or if he unlawfully "holds within a location or imprisons" another person. Alcalde claims that the statute establishes no standard of conduct at all. That claim fails when considered against the plain meaning of the words used in the statute. As we have already noted, a statute employs a standard, for purposes of vagueness, if " 'by [its] terms or *as authoritatively construed* [applies] without question to certain activities, but whose application to other behavior is uncertain.' " *Griego*, 761 P.2d at 976 (quoting *Smith v. Goguen*, 415 U.S. 566, 577–78, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974) (emphasis in original)). The statute prohibits the unlawful removal of a person from the area in which the person is occupied and the unlawful holding of a person within a location. The statute is not unconstitutionally vague. "[T]o succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected con-

duct ... a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that 'the law is impermissibly vague *in all of its applications.*' ...* People v. Moore*, 75 Cal.App.4[th] 37, 44–45, 88 Cal.Rptr.2d 914, 918 (1999) (quoting *Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1201, 246 Cal.Rptr. 629, 753 P.2d 585 (Cal.1988) (emphasis in original)). The statute prohibits specified conduct and is not unconstitutionally vague on its face.

[¶ 16]  We also disagree with Alcalde's assertion that the statute is unconstitutionally vague as applied to his conduct. As noted above, neither the term "vicinity" nor "confine" is vague in its ordinary usage. In this case, Alcalde approached the victim after following her home and parking his car so as to block her exit. He used her readiness to help him as an opening to physically assault her. After the victim had managed to honk her horn, Alcalde forcefully removed her from her vehicle and dragged her 15 to 20 feet to a privacy fence. Once he had successfully moved the victim to an area that could not be seen from the apartment complex, Alcalde pinned the victim to the ground and choked her.

[¶ 17]  Another court was confronted with a case in which the victim was confined for approximately five minutes and removed for a distance of only 100 to 150 feet. *State v. Morris*, 281 Minn. 119, 160 N.W.2d 715, 717 (1968). The defendant in that case argued that his actions were merely behavior incidental to an indecent assault and were not intended by the state's legislature to constitute kidnapping. Quoting a California Supreme Court case where the victim was forcibly moved only 22 feet, the Minnesota court eloquently stated, "It is the fact, not the distance, of forcible removal which constitutes kidnapping in this state." *Id.* (quoting *People v. Chessman*, 38 Cal.2d 166, 238 P.2d 1001, 1017 (1951)). The statute is not unconstitutionally vague as applied to Alcalde because any person of ordinary intelligence would be on notice that his acts were illegal under the statute.

## CONCLUSION

[¶ 18]  The substitution of the alternate juror after deliberations had begun without instructing the reconstituted jury to recommence deliberations from the beginning constituted prejudicial error. Accordingly, we reverse Alcalde's conviction and remand for a new trial.

LEHMAN, Justice, specially concurring, with whom KITE, Justice, joins.

[¶ 19]  I agree with the majority's reasoning, application of established case law, and relevant rule interpretation in reaching its ultimate determination under the facts and circumstances that exist in this matter. Nevertheless, while I am not bothered by the majority's holding which provides certainty and guidance in the future for the trial courts and litigants, I believe that this case points out the need for modification to W.R.Cr.P. 24(e) regarding the use of alternate jurors.

[¶ 20]  Frankly, the present condition of our established alternate juror rule defeats the very basic reason for selecting alternate jurors, namely, to prevent having to re-try an entire case should one of the regular jurors become unable to complete their assigned duties and thus promote judicial economy. Accordingly, I would respectfully suggest that W.R.Cr.P. 24(e) be modified to allow alternate jurors to take the place of original jurors *even after deliberations have commenced* under those safeguards set forth in *People v. Burnette*, 775 P.2d 583 (Colo.1989) adopted by the majority.

[¶ 21]  Modification to W.R.Cr.P. 24(e) would not only assure that a defendant receives a fair and impartial review by a jury of his peers of those charges alleged against him in the furtherance of judicial economy, but would also promote enhanced trust and confidence by the public in our legal system.