# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 50

**APRIL TERM, A.D. 2014**

**April 17, 2014**

RONALD S. KAMMERER, JR.,

Appellant
(Defendant),

v.

No. S-13-0070

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*

Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey S. Pope, Assistant Attorney General.  Argument by Mr. Delicath.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]    Appellant, Ronald S. Kammerer, Jr., challenges his conviction for failure to register as a sex offender, in violation of Wyo. Stat. Ann. § 7-19-302(j) and Wyo. Stat. Ann. § 7-19-307(a)(d).   He contends that Wyoming's Sex Offender Registration Act (Wyo. Stat. Ann. §§ 7-19-301 through 7-19-307) ("WSORA" or "the Act") violates the prohibitions against *ex post facto* laws contained in the United States and Wyoming Constitutions.  We affirm.

## ISSUES

[¶2]    Appellant presents the following issues:

> 1. Does Wyoming's Sex Offender Registration Act violate the United States Constitution, Art. 1, § 10, prohibition against enacting *ex post facto* laws?
>
> 2. Does Wyoming's Sex Offender Registration Act violate the Wyoming Constitution's prohibition of *ex post facto* laws?

The State presents an additional issue:

> 1. Did the district court commit plain error by not finding that the Wyoming Constitution provides greater protection than its federal analog and that the Wyoming Sex Offender Registration Act violates that greater protection?

## FACTS

[¶3]    In 1993, Appellant pled guilty to a second degree sexual assault crime in New Jersey.   He subsequently moved to Gillette, Wyoming.   Appellant's New Jersey conviction required him to register as a sex offender in Wyoming under Wyo. Stat. Ann. § 7-19-302(j) (LexisNexis 2011).[1]   In early 2012, the State charged Appellant with one

---

[1] The statute provides, in relevant part, as follows:

> (j) For an offender convicted of a violation of W.S. 6-2-201 if the victim was a minor, W.S. 6-2-302 or 6-2-303, W.S. 6-2-304(a)(iii) if the victim was under fourteen (14) years of age, W.S. 6-2-314(a)(i), W.S. 6-2-314(a)(ii) and (iii) if the victim was less than thirteen (13) years of age, W.S. 6-2-315(a)(ii), W.S. 6-2-315(a)(iii) and (iv) if the victim was less than thirteen (13) years of age, W.S. 6-2-316(a)(ii) and (iii), 6-4-402, 18

1

count of failure to register, in violation of Wyo. Stat. Ann. § 7-19-302(j) and Wyo. Stat. Ann. § 7-19-307(a)(d). Before trial, Appellant filed a *Motion to Dismiss as Ex Post Facto Law*, claiming that the Wyoming Sex Offender Registration Act is unconstitutional. The district court denied Appellant's motion.

[¶4]   The case proceeded to trial, and Appellant was convicted of failing to register. The jury also found that Appellant was subject to an enhanced penalty because he had previously been convicted of the crime of failing to register as a sex offender. The district court sentenced Appellant to a term of four to seven years imprisonment. This timely appeal followed.

## *STANDARD OF REVIEW*

[¶5]   Appellant presents a constitutional challenge to Wyoming's Sex Offender Registration Act. The question of whether a statute is constitutional is a question of law over which this Court exercises *de novo* review. *Smith v. State*, 2009 WY 2, ¶ 52, 199 P.3d 1052, 1067-68 (Wyo. 2009). We presume statutes to be constitutional and resolve any doubt in favor of constitutionality. *Id.*, ¶ 52, 199 P.3d at 1068.

## *DISCUSSION*

[¶6]   In 1994, Wyoming joined the majority of other states in enacting legislation relating to sex offender registration. *Snyder v. State*, 912 P.2d 1127, 1129 (Wyo. 1996). By 1996, every State, the District of Columbia, and the Federal Government had enacted laws requiring sex offender registration. *Smith v. Doe*, 538 U.S. 84, 90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003).

[¶7]   Under Wyoming's Act, offenders convicted of certain sex offenses must register with the county sheriff in their county of residence. Wyo. Stat. Ann. § 7-19-302(a). The basic provisions of the Act require the registrant to provide identifying information, including the registrant's name, aliases, address, date and place of birth, social security number, place and address of employment, a DNA sample, and any internet identifiers. *Id.* The registrant must also provide the date and place of his conviction, the crime for

U.S.C. § 2245, or an offense in another jurisdiction containing the same or similar elements, or arising out of the same or similar facts or circumstances as a criminal offense specified in this subsection, an attempt or conspiracy to commit any of the offenses specified in this subsection, . . . the division shall verify the accuracy of the offender's registered address, and the offender shall report, in person, his current address to the sheriff in the county in which the offender resides every three (3) months after the date of the initial release or commencement of parole.

which he was convicted, the age of each victim, the name and address of educational institutions at which the registrant is employed or attending school, the license plate number and description of his vehicle, and any phone number at which the registrant may be reached. *Id.* Additionally, the registrant must be photographed and fingerprinted. *Id.* If the registrant intends to travel outside the United States, he must inform the county sheriff of his plans at least twenty-one days prior to travel. Wyo. Stat. Ann. § 7-19-302(q). The duty to register continues for the duration of the registrant's life, but this duty may terminate in certain cases upon the registrant's petition to be relieved from the duty to register. Wyo. Stat. Ann. § 7-19-304(a).

[¶8] The Act also establishes a central registry of offenders and makes certain identifying information and information relating to the registrant's offense available to the public. Wyo. Stat. Ann. § 7-19-303(a), (c)(iii). The Act requires this information to be made available through the internet, and also requires the dissemination of notice of a registrant's status as a sex offender to residential neighbors living within 750 feet of the registrant. Wyo. Stat. Ann. § 7-19-303(c)(ii), (iii). A sex offender who fails to comply with the Act is subject to criminal prosecution. Wyo. Stat. Ann. § 7-19-307.

[¶9] In his first issue, Appellant contends that Wyoming's Sex Offender Registration Act violates the *ex post facto* clause of the United States Constitution because it retroactively inflicts greater punishment for his crime. The passage of *ex post facto* laws is prohibited by Article 1, § 10 of the United States Constitution and Article 1, § 35 of the Wyoming Constitution.[2] "[A]ny statute . . . which makes more burdensome the punishment for a crime, after its commission, . . . is prohibited as *ex post facto*." *Smith v. State*, ¶ 55, 199 P.3d at 1068 (quoting *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)). We have stated that the constitutional prohibition against *ex post facto* laws applies only to statutes that impose penalties. *Snyder*, 912 P.2d at 1130.

---

[2] Those sections provide, in relevant part, as follows:

> No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

U.S. Const. art. I, § 10.

> No ex post facto law, nor any law impairing the obligation of contracts, shall ever be made.

Wyo. Const. art. I, § 35.

In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishment – that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature.

*Id.* (quoting *Trop v. Dulles*, 356 U.S. 86, 96, 78 S.Ct. 590, 595-96, 2 L.Ed.2d 630 (1958)).

[¶10] This is not the first time that a constitutional challenge to Wyoming's Sex Offender Registration Act has been before this Court.  In *Snyder*, the appellant claimed the Act was an unconstitutional *ex post facto* law because it retroactively inflicted punishment after his crime was committed.  Specifically, the appellant claimed that the Act was punitive because (1) it submitted the registrant to police surveillance and lineup appearances if a similar crime was committed, (2) the fact of registration itself was admissible under the Wyoming Rules of Evidence, and (3) failure to register was punishable by imprisonment.  *Snyder*, 912 P.2d at 1130.  We began our analysis by noting that

The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation.

*Id.* at 1131 (quoting *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960)).  In our discussion, we noted that "the Act is unaccompanied by a description of its purpose and legislative history does not exist which would assist in discerning whether the legislative intent was regulatory or punitive."  Nonetheless, we concluded that "The plain reading of the statutory scheme . . . indicates that the legislature intended to facilitate law enforcement and protection of children.  There was no intent to inflict greater punishment." *Snyder*, 912 P.2d at 1131.  Accordingly, we held that the Act "does not inflict greater punishment and does not violate the ex post facto

clause." *Id.*

[¶11] Since its initial passage in 1994, Wyoming's Sex Offender Registration Act has been amended on numerous occasions. Appellant claims that the revisions to WSORA are punitive because they require "the use of 'active' as well as passive community notification," and because the Act "requires frequent in-person registration, and imposes elevated movement and residency restrictions." Appellant acknowledges that, in *Snyder*, we found that amendments to WSORA imposing stricter registration requirements did not violate the *ex post facto* clause of the United States Constitution. He contends, however, that the recent amendments "tip the scale and make the current version of WSORA more punitive."

[¶12] Subsequent to our decision in *Snyder*, the United States Supreme Court, in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146, 155 L.Ed.2d 164 (2003), considered whether Alaska's sex offender registration and notification statutes constituted retroactive punishment forbidden by the *ex post facto* clause. The statutory scheme at issue in *Smith v. Doe* contained elements similar to those found in the current version of Wyoming's Act. The Alaska law required, among other things, that sex offenders be photographed and fingerprinted, and mandated that offenders provide their name, aliases, identifying features, address, place of employment, date of birth, conviction information, driver's license number, information about vehicles to which they had access, and postconviction treatment history. *Id.*, 538 U.S. at 90, 123 S.Ct. at 1145-46. Much of this information was made available to the public. *Id.*, 538 U.S. at 91, 123 S.Ct. at 1146. In cases involving an aggravated sex offense or two or more sex offenses, the offender was required to register for life and verify the information quarterly. *Id.*, 538 U.S. at 90, 123 S.Ct. at 1146. The law also required an offender to notify the local police department of any changes in residence. *Id.*

[¶13] The Court set forth the framework for its inquiry as follows:

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361, 138 L.Ed.2d 501, 117 S.Ct. 2072 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid.* (quoting *United States v. Ward*, 448 U.S. 242, 248-249, 65 L.Ed.2d 742, 100 S.Ct. 2636 (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks*, *supra*, at 361, "'only the clearest proof' will suffice to override legislative intent and transform what

5

has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100, 139 L.Ed.2d 450, 118 S.Ct. 488 (1997) (quoting *Ward*, *supra*, at 249); *see also Hendricks*, *supra*, at 361; *United States v. Ursery*, 518 U.S. 267, 290, 135 L.Ed.2d 549, 116 S.Ct. 2135 (1996); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365, 79 L.Ed.2d 361, 104 S.Ct. 1099 (1984).

*Smith v. Doe*, 538 U.S. at 92, 123 S.Ct. at 1146-47. In the first part of its two-step inquiry, the Court noted that "As we observed in *Hendricks*, where we examined an *ex post facto* challenge to a post-incarceration confinement of sex offenders, an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" The Court concluded, as it did in *Hendricks*, that "nothing on the face of the statute suggests that the legislature sought to create anything other than a civil . . . scheme designed to protect the public from harm." *Smith v. Doe*, 538 U.S. at 93, 123 S.Ct. at 1147 (quoting *Hendricks*, 521 U.S. at 361, 117 S.Ct. at 2082).

[¶14] The Court then proceeded to the question of whether the effect of the Alaska statute negated the legislature's intent to impose regulatory, as opposed to punitive, sanctions. To answer this question, the Court invoked the factors identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), which the Court noted were designed to apply in "various constitutional contexts." *Smith v. Doe*, 538 U.S. at 97, 123 S.Ct. at 1149. The Court stated that the factors most relevant to its analysis were "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."[3] *Id.* After considering the relevant factors, the Court concluded that "respondents cannot show, much less by the

---

[3] The Court concluded that the remaining *Mendoza-Martinez* factors were of "little weight" in the context of sex offender registration legislation:

> The two remaining *Mendoza-Martinez* factors – whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime – are of little weight in this case. The regulatory scheme applies only to past conduct, which was, and is, a crime. This is a necessary beginning point, for recidivism is the statutory concern. The obligations the statute imposes are the responsibility of registration, a duty not predicated upon some present or repeated violation.

*Smith v. Doe*, 538 U.S. at 105, 123 S.Ct. at 1154.

6

clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause." *Id.,* 538 U.S. at 105-06, 123 S.Ct. at 1154. Application of the principles articulated in *Snyder* and *Smith* to the present case leads us similarly to the conclusion that the current version of WSORA does not violate the *ex post facto* clause of the United States Constitution.

**Legislative Intent**

[¶15] We begin our analysis by examining the legislature's intent in enacting the amendments to Wyoming's Sex Offender Registration Act. Our inquiry is whether the legislature "indicated either expressly or impliedly a preference" to impose civil or criminal sanctions. *Smith v. Doe*, 538 U.S. at 93, 123 S.Ct. at 1147 (quoting *Hudson*, 522 U.S. at 99, 118 S.Ct. at 493). Answering this question is a matter of statutory construction. *Smith v. Doe*, 538 U.S. at 92, 123 S.Ct. at 1147. We look to the "statute's text and its structure to determine the legislative objective." *Id.*

[¶16] As noted above, we have previously determined, in *Snyder*, 912 P.2d at 1131, that WSORA is intended to impose regulatory, as opposed to punitive, requirements. We affirmed this conclusion in *In re JJF v. State*, 2006 WY 41, ¶ 25, 132 P.3d 170, 178 (Wyo. 2006), where we stated that "Wyoming's [sex offender registration] statutes, like others nationwide, are regulatory rather than punitive in purpose." Appellant contends, however, that the amendments to WSORA indicate that the legislature intended to impose punishment. Appellant claims that the amendments were enacted in response to federal legislation relating to sex offender registration which conditions the receipt of federal grants on compliance with the federal standards. As a result, according to Appellant, "Wyoming's enactment of WSORA was for financial gain." Additionally, Appellant notes that the Act is codified within Wyoming's Criminal Procedure Code, and suggests that this fact indicates the law is intended to be punitive.

[¶17] Even if we assume that the Wyoming legislature was "motivated by financial gain," as posited by Appellant, we fail to see how this fact indicates that the legislature intended to impose punishment. Appellant does not attempt to explain how this fact would be indicative of punitive intent. Consequently, we find this argument unpersuasive.

[¶18] Appellant acknowledges that "the Supreme Court has noted that criminal codification does not itself transform civil laws [into] criminal ones." Indeed, in *Smith v. Doe*, 538 U.S. at 94-95, 123 S.Ct. at 1148, the Court responded to a similar argument:

> Other formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's

7

intent. *See Hendricks*, *supra*, at 361; *Hudson*, *supra*, at 103; *89 Firearms*, *supra*, at 363. In this case these factors are open to debate. The notification provisions of the Act are codified in the State's "Health, Safety, and Housing Code," § 18, confirming our conclusion that the statute was intended as a nonpunitive regulatory measure. *Cf. Hendricks*, *supra*, at 361 (the State's "objective to create a civil proceeding is evidenced by its placement of the Act within the [State's] probate code, instead of the criminal code" (citations omitted)). The Act's registration provisions, however, are codified in the State's criminal procedure code, and so might seem to point in the opposite direction. These factors, though, are not dispositive. The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one. In *89 Firearms*, the Court held a forfeiture provision to be a civil sanction even though the authorizing statute was in the criminal code. 465 U.S., at 364-365. The Court rejected the argument that the placement demonstrated Congress' "intention to create an additional criminal sanction," observing that "both criminal and civil sanctions may be labeled 'penalties.'" *Id.*, at 364, n.6.

The same rationale applies here. . . . The partial codification of the Act in the State's criminal procedure code is not sufficient to support a conclusion that the legislative intent was punitive.

Likewise, in the present case, we are not persuaded that the legislature's mere codification of WSORA within Wyoming's Criminal Procedure Code indicates that the legislature intended for the statutes to be punitive. WSORA was also codified within the Criminal Procedure Code at the time *Snyder* and *In re JJF* were decided. That fact, however, did not affect our conclusion that the legislature intended to enact a nonpunitive regulatory scheme. We find no reason, and Appellant has offered none, to depart from our precedent with respect to this issue. We turn, then, to the issue of whether the statutory scheme is so punitive as to negate the legislature's intent to impose a regulatory scheme for convicted sex offenders.

**Punitive Effect**

[¶19] To determine whether the effect of WSORA negates the legislature's intent to create regulatory requirements for sex offenders, we apply the relevant factors set forth in *Kennedy v. Mendoza-Martinez*, as identified in *Smith v. Doe*. Again, those factors evaluate whether the regulatory scheme (1) has been regarded in our history and

traditions as a punishment, (2) imposes an affirmative disability or restraint, (3) promotes the traditional aims of punishment, (4) has a rational connection to a nonpunitive purpose, or (5) is excessive with respect to this purpose. *Smith v. Doe*, 538 U.S. at 97, 123 S.Ct. at 1149. We will address each of these factors in turn. Ultimately, we conclude that the effects of the Act do not override the legislature's intent to enact a regulatory scheme for registration of sex offenders.

## (1) Historically regarded as punishment

[¶20] Evaluation of the first *Mendoza-Martinez* factor is based on the notion that "a State that decides to punish an individual is likely to select a means deemed punitive in our tradition, so that the public will recognize it as such." *Smith v. Doe*, 538 U.S. at 97, 123 S.Ct. at 1149. Appellant contends "The world wide website dissemination of [an] offender's picture and personal information without any type of restriction or monitoring is akin to traditional shaming punishments intended to inflict public disgrace." Appellant also suggests that the Act's requirement that notice of the offender's registration be delivered to residential neighbors within 750 feet of the offender's residence is similar to the historical punishment of public shaming. Finally, Appellant claims that the Act's reporting provisions are similar to supervised probation or parole.

[¶21] The Third Circuit Court of Appeals, addressing a challenge to New Jersey's notification scheme for registered sex offenders, which involved an element of risk assessment, has distinguished between the State's public dissemination of personal information and the historical punishments of public shaming or banishment:

> Nor can we accept the suggested analogy between notification's re-publication of information publicly available at the time of a sex offender's trial and the holding of a convicted defendant up to public ridicule. Public shaming, humiliation and banishment all involve more than the dissemination of information. State dissemination of information about a crime and its perpetrators was unnecessary in colonial times because all in the colonial settlement would have knowledge of these matters. Rather, these colonial practices inflicted punishment because they either physically held the person up before his or her fellow citizens for shaming or physically removed him or her from the community.
>
> The "sting" of [New Jersey's sex offender notification scheme] results not from their being publicly displayed for ridicule and shaming but rather from the dissemination of accurate public record information about their past criminal

activities and a risk assessment by responsible public agencies based on that information. This distinction makes a substantial difference when one looks for the relevant historical understanding of our society. Dissemination of information about criminal activity has always held the potential for substantial negative consequences for those involved in that activity. Dissemination of such information in and of itself, however, has never been regarded as punishment when done in furtherance of a legitimate governmental interest.

When there is probable cause to believe that someone has committed a crime, our law has always insisted on public indictment, public trial, and public imposition of sentence, all of which necessarily entail public dissemination of information about the alleged activities of the accused.

. . .

Whenever these state notices are directed to a risk posed by individuals in the community, those individuals can expect to experience embarrassment and isolation. Nevertheless, it is generally recognized that the state has a right to issue such warnings and the negative effects are not regarded as punishment. Because the closest analogies have not historically been regarded as punishment, we conclude that historical precedent does not demonstrate an objective punitive purpose.

*E.B. v. Verniero*, 119 F.3d 1077, 1099-1101 (3d Cir. 1997) (*see also Femedeer v. Haun*, 227 F.3d 1244, 1251 n.2 (10th Cir. 2000) (noting that "the Third Circuit's discussion of whether notification has historically been regarded as punishment is instructive," despite the fact that New Jersey's notification scheme contained an element of risk assessment absent from Utah's system)). Further, we note that at least one other Circuit Court of Appeals has determined that "active" dissemination of an individual's sex offender status is distinguishable from public shaming:

Plaintiffs attempt to distinguish *Smith* [*v. Doe*] on the grounds that, unlike the Alaska law at issue there, AB 579 requires law enforcement agencies actively to provide notice of an individual's sex-offender status in many instances. *See* AB 579 § 29(2). We have previously held that a state law which included a provision requiring government agencies actively

10

to notify the public of certain individuals' sex-offender status was not so punitive in effect that it violated the Ex Post Facto Clause. *Russell* [*v. Gregoire*], 124 F.3d [1079,] 1082, 1091-92 [(9th Cir. 1997)]. That logic remains sound in the wake of *Smith*. Active dissemination of an individual's sex offender status does not alter the Court's core reasoning that "stigma . . . results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." *Smith*, 538 U.S. at 98. Though "humiliation increas[es] in proportion to the extent of the publicity," the "purpose and the principal effect of notification are to inform the public for its own safety." *Id.* at 99.

*ACLU v. Masto*, 670 F.3d 1046, 1055-56 (9th Cir. 2012). We are in agreement with the analysis of these courts. Although dissemination of information relating to a registrant's status as a sex offender may have negative consequences for the registrant, information regarding the offense is made public at the time of trial, and its publication under WSORA is merely a necessary consequence of the Act's intent to protect the public from harm. Accordingly, we conclude, consistently with the authorities quoted above, that WSORA's publication and notification requirements are not analogous to the historic punishment of public shaming.

[¶22] We are also not persuaded that WSORA's reporting requirements are akin to supervised probation or parole. As the Supreme Court explained in *Smith v. Doe*, 538 U.S. at 101-102, 123 S.Ct. at 1152, reporting requirements do not subject registrants to supervision, and do not prevent registrants from moving where they please:

> Probation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction. *See generally Johnson v. United States*, 529 U.S. 694, 146 L.Ed.2d 727, 120 S.Ct. 1795 (2000); *Griffin v. Wisconsin*, 483 U.S. 868, 97 L.Ed.2d 709, 107 S.Ct. 3164 (1987). By contrast, offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision. Although registrants must inform the authorities after they change their facial features (such as growing a beard), borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so. A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the

11

individual's original offense. Whether other constitutional objections can be raised to a mandatory reporting requirement, and how those questions might be resolved, are concerns beyond the scope of this opinion. It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause.

While the reporting provisions of WSORA require registrants to interact periodically with law enforcement agencies, those requirements do not subject registrants to monitoring similar to that imposed under supervised probation or parole. We conclude that this factor does not demonstrate that WSORA has a punitive purpose or effect.

### (2) Affirmative disability or restraint

[¶23] Under the second *Mendoza-Martinez* factor, "we inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith v. Doe*, 538 U.S. at 99-100, 123 S.Ct. at 1151. Appellant contends that WSORA imposes restraints that are "severe and time consuming," noting the Act's requirements that the offender must report his address in person to the county sheriff every three months, report any change in residence, vehicle, or employment status within three days, and report an intention to leave the country at least twenty-one days prior to travel.

[¶24] Several Circuit Courts of Appeals, addressing the provisions of the federal Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq.*, have found that requiring in-person appearances by the registrant to update personal information, and to provide notification of changes in residence, vehicle, and employment status, does not impose an affirmative disability. In *United States v. Parks*, 698 F.3d 1, 6 (1st Cir. 2012), the First Circuit Court of Appeals noted the regulatory justifications for requiring in-person appearances by the registrant:

> To appear in person to update a registration is doubtless more inconvenient than doing so by telephone, mail or web entry; but it serves the remedial purpose of establishing that the individual is in the vicinity and not in some other jurisdiction where he may not have registered, confirms identity by fingerprints and records the individual's current appearance.

*See also United States v. Under Seal*, 709 F.3d 257, 265 (4th Cir. 2013) ("Although Appellant is required under SORNA to appear periodically in person to verify his information and submit to a photograph, *see* 42 U.S.C. § 16916, this is not an affirmative disability or restraint."); *United States v. W.B.H.*, 664 F.3d 848, 857 (11th Cir. 2011)

("Appearing in person may be more inconvenient, but requiring it is not punitive."). Additionally, in *Smith v. Doe*, 538 U.S. at 100, 123 S.Ct. at 1151, the Supreme Court found that Alaska's law imposed no physical restraint on the registrant and therefore constituted a negligible affirmative disability. The Court noted that any negative consequences to a registrant's employment or housing prospects stemmed from the fact of the registrant's conviction, rather than the existence of the registry. *Id.*, 538 U.S. at 101, 123 S.Ct. at 1151. The Tenth Circuit reached a similar conclusion in *Femedeer*, 227 F.3d at 1250, with respect to Utah's sex offender registration statutes, stating that "notification does not by itself prohibit sex offenders from pursuing any vocation or avocation available to other members of the public, and we therefore conclude that this factor weighs against finding that the statute is punitive in purpose or effect."

[¶25] Similar to the Alaska statute at issue in *Smith v. Doe*, 538 U.S. at 100, 123 S.Ct. at 1151, the Wyoming Act "does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences," and the Act does not require registrants to seek permission before making changes in their employment or residence. Unlike SORNA and the Alaska statute, however, Wyoming's Act requires registrants to provide notice to the county sheriff at least twenty-one days prior to traveling outside the country. Wyo. Stat. Ann. § 7-19-302(q). Appellant asserts that this provision imposes an affirmative restraint because it restricts "spontaneous" travel outside the country. We agree that this particular provision imposes a restraint by preventing the registrant from leaving the country without first providing notice. Ultimately, however, we conclude that this provision does not make the statute "so punitive either in purpose or effect" as to negate the legislature's intent to create a regulatory scheme. Examining the statute in its entirety, we cannot conclude that, as a result of the effect of this particular provision, Appellant has met his "heavy burden" of establishing that the Act is unconstitutional. Further, we note that Appellant was not accused of violating this particular provision of the Act, nor did he allege that he had made any attempt to travel outside of the United States. Rather, Appellant has challenged the Act in its entirety. Even if the constitutionality of Wyo. Stat. Ann. § 7-19-302(q), in isolation, were before us, however, we would attempt to interpret the Act so as to avoid an unconstitutional result. If we held that Wyo. Stat. Ann. § 7-19-302(q) were invalid, we would uphold those portions of the Act which could be given effect without the invalid provision. *See Rutti v. State*, 2004 WY 133, ¶ 15, 100 P.3d 394, 403 (Wyo. 2004); Wyo. Stat. Ann. § 8-1-103(a)(viii).[4]

---

[4] Wyo. Stat. Ann. § 8-1-103(a)(viii) provides as follows:

> (viii) If any provision of any act enacted by the Wyoming legislature or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of any such act are severable[.]

13

However, Appellant has not presented any argument with respect to the severability of Wyo. Stat. Ann. § 7-19-302(q). As a result, we do not address that issue. We conclude that the Act's reporting requirements do not negate the legislature's intent to create a regulatory scheme.

### (3) Traditional aims of punishment

[¶26]  The traditional aims of punishment identified in *Smith v. Doe* are retribution and deterrence. In that case, the Court stated that although the Alaska statute may have a deterrent effect on future crimes, "[a]ny number of governmental programs might deter crime without imposing punishment." *Id.*, 538 U.S. at 102, 123 S.Ct. at 1152. The Court noted that "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Id.* (quoting *Hudson*, 522 U.S. at 105, 118 S.Ct. at 496). Similar to the Supreme Court's conclusion with respect to Alaska's sex offender registration statute, we find that Wyoming's Act does not have a punitive effect merely because it may deter the commission of sex offenses.

[¶27]  Appellant also contends that WSORA's retributive effect is evidenced by its classification of offenders based on their crimes, rather than their likelihood of reoffending. According to Appellant, "By classifying offenders based on their conviction without rational relation to the likelihood of re-offense, the legislature has both deterred future crimes and exacted further retribution for past acts." This argument, however, was also rejected in *Smith v. Doe*, 538 U.S. at 102, 123 S.Ct. at 1152:

> The Act, it is true, differentiates between individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense. Alaska Stat. § 12.63.020(a)(1) (2000). The broad categories, however, and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective.

As in *Smith*, we find that the classification of offenders based on their crimes is not indicative of retributive intent. This factor does not weigh in favor of a finding that WSORA has a punitive effect.

### (4) Rational connection to a nonpunitive purpose

[¶28]  According to the Supreme Court, whether the challenged regulation is rationally connected to a nonpunitive purpose is a "most significant" factor in determining whether a statute has punitive effect. *Smith v. Doe*, 538 U.S. at 102, 123 S.Ct. at 1152. With respect to this factor, Appellant asserts that "WSORA's broad notification and

14

registration provisions bear no special or rational relationship to any non-punitive purpose." We cannot agree. As noted in *Femedeer*, 227 F.3d at 1253, the purpose of sex offender registration is to "aid in the prevention, avoidance, and investigation of future sex offenses." *See also Smith v. Doe*, 538 U.S. at 102-03, 123 S.Ct. at 1152 ("the Act has a legitimate nonpunitive purpose of 'public safety, which is advanced by alerting the public to the risk of sex offenders in their community.'"). Appellant's argument ignores the readily apparent and widely recognized purposes of sex offender registration statutes. We conclude WSORA bears a rational connection to the goal of public safety by providing for identification of individuals convicted of sex offenses, and by making that information available to law enforcement agencies and the general public. This factor weighs heavily in favor of a finding that WSORA is not punitive in purpose or effect.

## (5) Excessive in scope

[¶29] The final *Mendoza-Martinez* factor relevant to our analysis is whether the regulatory scheme is excessive with respect to its nonpunitive purpose. As the Supreme Court explained in *Smith v. Doe*, 538 U.S. at 105, 123 S.Ct. at 1154, "The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." The Court found that the Alaska statute met this standard after noting that "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103, 123 S.Ct. at 1153.

[¶30] Appellant contends the Act's mandatory notification requirement, as well as the publication of a registrant's personal information on the internet, is excessive in relation to the Act's nonpunitive purpose. Appellant cites to the Alaska Supreme Court's decision in *Doe v. State*, 189 P.3d 999 (Alaska 2008), which addressed a state constitutional challenge to Alaska's sex offender registration statute following the Supreme Court's decision in *Smith v. Doe*. In that case, the Alaska Supreme Court determined that Alaska's statute was excessive in relation to the state's interest in public safety before ultimately concluding that the punitive effect of the statute outweighed its nonpunitive purpose. *Id.*, 189 P.3d at 1018. In finding that the Alaska statute was excessive, the Court relied heavily on the fact that the statute provided "no mechanism by which a registered sex offender can petition the state or a court for relief from the obligations of continued registration and disclosure." *Id.* at 1017. The Court also noted that the statute was excessive because it applied only to those persons convicted of specified offenses, and excluded individuals "who may have committed the same acts and may pose threats to the public but who avoided conviction by pleading to a lesser charge or whose convictions were overturned." *Id.*

[¶31] The present case is distinguishable from *Doe v. State*. In contrast to the Alaska

15

statute at issue in that case, Wyoming's Act expressly provides a mechanism by which certain categories of registered sex offenders can petition the district court for relief from the duty to register. Wyo. Stat. Ann. § 7-19-304(a)(i), (ii). Specifically, Wyo. Stat. Ann. § 7-19-304(d) provides:

> (d) An offender seeking a reduction in his registration period as provided in paragraph (a)(i) or (ii) of this section shall demonstrate to the court that he has maintained a clean record by:
>
>> (i) Having no conviction of any offense for which imprisonment for more than one (1) year may be imposed;
>>
>> (ii) Having no conviction of any sex offense;
>>
>> (iii) Successfully completing any periods of supervised release, probation and parole; and
>>
>> (iv) Successfully completing any sex offender treatment previously ordered by the trial court or by his probation or parole agent.

Further, we are not persuaded that Wyoming's Act is excessive because it applies only to persons convicted of sex offenses, and not to those individuals who plead to a lesser charge, whose convictions are overturned, or whose cases are disposed of pursuant to Wyo. Stat. Ann. § 7-13-301. Wyo. Stat. Ann. § 7-19-301(a)(iii). The legislature's identification of individuals convicted of the specified sex offenses constitutes a reasonable basis for determining potential risks to the public, and does not demonstrate that the regulatory scheme is "excessive." We conclude that, in light of the substantial interests at stake, WSORA's requirements constitute a reasonable method of achieving the goal of public safety.

[¶32] Ultimately, we conclude that each of the *Mendoza-Martinez* factors weighs in favor of a finding that WSORA imposes only a regulatory burden on convicted sex offenders. The effects of the Act do not negate the legislature's intent to impose a regulatory scheme under WSORA. Accordingly, we hold, consistent with our decision in *Snyder*, that the Act does not violate the *ex post facto* clause of the United States Constitution.

**Wyoming Constitution**

[¶33] In Appellant's second issue, he claims the Act violates the *ex post facto* clause of

16

the Wyoming Constitution. According to Appellant, the Wyoming Constitution provides "greater protection" against the passage of *ex post facto* laws than the United States Constitution. The State responds that, because Appellant did not raise this issue below, we should review for plain error. Under its plain error analysis, the State contends that there is no unequivocal rule of law in Wyoming indicating that the Wyoming Constitution provides greater protection than the United States Constitution in prohibiting *ex post facto* laws.

[¶34] We agree with the State. Both constitutions clearly prohibit the passage of *ex post facto* laws. Consequently, in order to find that the Wyoming Constitution provides "greater" protection, we would be forced to conclude that Wyoming's definition of an *ex post facto* law, as applied to this case, is broader than the definition of that term as it is used in the United States Constitution. We have no reason to draw such a conclusion, and Appellant has provided no cogent argument or persuasive authority to support a claim that Wyoming's definition of an *ex post facto* law is broader than the federal definition. To the contrary, we expressly adopted the Supreme Court's definition of an *ex post facto* law, as one "which makes more burdensome the punishment for a crime, after its commission," in *Smith v. State*, ¶ 55, 199 P.3d at 1068. Accordingly, we find no merit in Appellant's claim that the Wyoming Constitution provides greater protection against *ex post facto* laws than its federal counterpart.

[¶35] Affirmed.