FOX, Justice.
[¶1] Tosha Leigh Sheesley was convicted of one count of third-degree sexual assault. She appeals her conviction, raising substantive due process challenges under the United States and Wyoming Constitutions. We affirm.
ISSUES
1. Was Ms. Sheesley denied her right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution?
2. Was Ms. Sheesley denied her right to due process of law under Article 1, Sections 6, 7, and 36 of the Wyoming Constitution ?
FACTS
[¶2] Tosha Leigh Sheesley was a resident manager of the Casper Re-Entry Center (CRC), an adult community correctional facility in Casper, Wyoming. While employed at the CRC, Ms. Sheesley began a sexual relationship with KJ, a CRC resident. The State charged Ms. Sheesley with two counts of sexual assault in the second degree and one count of sexual assault in the third degree under Wyo. Stat. Ann. §§ 6-2-303(a)(vii) and 6-2-304(a)(iii) (LexisNexis 2015), which prohibit sexual contact between employees and residents of correctional facilities. Ms. Sheesley moved to dismiss the charges, arguing the statutes violated her substantive due process rights under the United States and Wyoming Constitutions. The district court denied the motion, reasoning that the statutes were designed "to protect those who are in a position that, per se, negates consent" and thus, do not violate the United States or Wyoming Constitutions because neither constitution recognizes a fundamental right to nonconsensual sex. The State agreed to dismiss two of the counts against Ms. Sheesley in exchange for a guilty plea to one count of sexual assault in the third degree in violation of Wyo. Stat. Ann. § 6-2-304(a)(iii). Ms. *833 Sheesley pleaded guilty, reserving her right to appeal the denial of her motion to dismiss. The district court imposed a sentence of three to five years imprisonment, suspended on condition that Ms. Sheesley complete three years of supervised probation.
STANDARD OF REVIEW
[¶3] Ms. Sheesley presents a constitutional challenge to Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii). "The question of whether a statute is constitutional is a question of law over which this Court exercises de novo review." Vaughn v. State , 2017 WY 29, ¶ 7, 391 P.3d 1086, 1091 (Wyo. 2017) (quoting Kammerer v. State , 2014 WY 50, ¶ 5, 322 P.3d 827, 830 (Wyo. 2014) ). Statutes are presumed constitutional, and we resolve any doubt in favor of constitutionality. Vaughn , 2017 WY 29, ¶ 7, 391 P.3d at 1091. The party challenging the constitutionality of a statute bears the burden of proving its unconstitutionality beyond any reasonable doubt. Gordon v. State by and through Capitol Bldg. Rehab. , 2018 WY 32, ¶ 12, 413 P.3d 1093, 1099 (Wyo. 2018) (citing Krenning v. Heart Mt. Irrigation Dist. , 2009 WY 11, ¶ 33, 200 P.3d 774, 784 (Wyo. 2009) ).
DISCUSSION
I. Was Ms. Sheesley denied her right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution?
[¶4] Ms. Sheesley argues Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii)[1] are facially invalid because "they proscribe conduct which has been recognized as a protected liberty interest under the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution[ ]" and "reach a substantial amount of lawful conduct-namely, the fundamental liberty interest of private, consensual, sexual relations between adults[.]" The State counters that the statutes cannot be struck down as facially overbroad because "there is no general constitutional doctrine of overbreadth; instead, overbreadth analysis is a limited exception confined to a few doctrinal areas[,]" primarily limited to the First Amendment context.
[¶5] We easily dispose of Ms. Sheesley's claim under the Fifth Amendment to the United States Constitution. The guarantee of due process of law in the Fifth Amendment restrains federal legislative action. 16B Am. Jur. 2d Constitutional Law §§ 945, 975, Westlaw (database updated February 2019); Massey v. Wheeler , 221 F.3d 1030, 1036 n.1 (7th Cir. 2000) ; Morin v. Caire , 77 F.3d 116, 120 (5th Cir. 1996). Ms. Sheesley challenges state legislation; thus, we analyze her claims under the Fourteenth Amendment. See Massey , 221 F.3d at 1036 n.1.
[¶6] Ms. Sheesley does not challenge the statutes as applied to her, nor could she. By her guilty plea, Ms. Sheesley "admitted all the essential elements of the crime as charged , thereby acknowledging" the factual basis of her conviction. Moore v. State , 912 P.2d 1113, 1115 (Wyo. 1996) (emphasis in original). Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii) clearly proscribe Ms. Sheesley's conduct, and we conclude that there is a rational basis for prohibiting sexual contact between employees and residents of correctional facilities. Therefore, there is no basis for Ms. Sheesley's overbreadth challenge *834 to Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii)"as applied to [her] behavior." Moore , 912 P.2d at 1116 (emphasis in original).
[¶7] "When a statute is challenged ... on its face, the court examines the statute not only in light of the complainant's conduct, but also as it might be applied in other situations." Alcalde v. State , 2003 WY 99, ¶ 13, 74 P.3d 1253, 1259 (Wyo. 2003). A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." Gordon , 2018 WY 32, ¶ 12, 413 P.3d at 1099.[2] "A 'facial challenge' [to a statute] is available in only two situations: (1) when the statute reaches a substantial amount of constitutionally protected conduct, and (2) when the statute is shown to specify no standard of conduct at all." Alcalde , 2003 WY 99, ¶ 13, 74 P.3d at 1260 (quoting Ochoa v. State , 848 P.2d 1359, 1363 (Wyo. 1993) ) (alteration in original). The first situation refers to overbreadth doctrine, under which a statute is facially void if, in addition to regulating a non-constitutionally protected area, "it also substantially proscribes activities which involve the exercise of constitutionally protected rights."[3] Ochoa , 848 P.2d at 1363-64 (citing Broadrick v. Oklahoma , 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973) ). The State correctly observes that "[a]pplication of the 'overbreadth doctrine' has most frequently occurred in the First Amendment's protection of speech[.]" Ochoa , 848 P.2d at 1363 (citing Laurence H. Tribe, American Constitutional Law § 12-27, at 1022 (2d ed. 1988)). The doctrine originated in Thornhill v. Alabama , which expressly limited its application to the First Amendment context. 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940) (stating that a statute is overbroad when it "does not aim specifically at evils within the allowable area of State control but, ... sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press ") (emphasis added). See also Richard H. Fallon, Jr., Making Sense of Overbreadth , 100 Yale L.J. 853 (1991) (describing overbreadth as a First Amendment doctrine). We, too, have described overbreadth as a First Amendment doctrine. Rutti v. State , 2004 WY 133, ¶ 11, 100 P.3d 394, 401 (Wyo. 2004) ("The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges.") (quoting Virginia v. Hicks , 539 U.S. 113, 118-120, 123 S.Ct. 2191, 2196-97, 156 L.Ed.2d 148 (2003) ).
[¶8] Despite overbreadth doctrine's ostensible confinement to First Amendment challenges, the United States Supreme Court has not always strictly adhered to that limitation. See, e.g. , Berger v. New York , 388 U.S. 41, 44, 87 S.Ct. 1873, 1876, 18 L.Ed.2d 1040 (1967) (holding a statute "too broad in its sweep ... and [ ], therefore, violative of the Fourth and Fourteenth Amendments."); Hodel v. Irving , 481 U.S. 704, 724, 107 S.Ct. 2076, 2087, 95 L.Ed.2d 668 (1987) (Stevens, J., concurring) (criticizing the majority for striking down statute challenged on Fifth Amendment grounds based "on the implicit adoption of an overbreadth analysis that has heretofore been restricted to the First Amendment area"). Lower courts have likewise acknowledged overbreadth outside of the First Amendment context, although not consistently. Compare, e.g. , Pottinger v. City of Miami , 810 F.Supp. 1551, 1577 (S.D. Fla. 1992) (holding ordinances prohibiting sleeping or sitting on sidewalks or in parks overbroad as applied because they "reach[ed] a substantial amount of ... constitutionally protected rights under the eighth amendment and ... the equal protection clause of the fourteenth amendment"), with Joyce v. City and County of San Francisco , 846 F.Supp. 843, 862 (N.D. Cal. 1994) (rejecting overbreadth claim challenging *835 ordinances that prohibited, among other things, sleeping in public parks because "[o]verbreadth is a challenge which may be successfully leveled only where First Amendment concerns are at stake"). For our part, although we have stated that overbreadth doctrine applies equally when constitutional protections outside the First Amendment are involved, Ochoa , 848 P.2d at 1363, we have never invalidated a statute on overbreadth grounds for infringing on a non-First Amendment right.
[¶9] We do not find it necessary to define the precise scope of overbreadth doctrine in this case. We acknowledge that cases purportedly applying overbreadth doctrine outside the First Amendment context are subject to varying interpretation and debate. See generally John F. Decker, Overbreadth Outside the First Amendment , 34 N.M. L. Rev. 53 (Winter 2004) ; Fallon, Jr., supra ; Henry P. Monaghan, Overbreadth , 1981 Sup. Ct. Rev. 1 (1981). However, for overbreadth doctrine to apply "a protected constitutional right requiring heightened judicial review must be involved[,]" Ochoa , 848 P.2d at 1363, regardless of whether the right derives from the First Amendment or otherwise. Because we find the right asserted here does not warrant heightened scrutiny, Ms. Sheesley's facial challenge fails.
[¶10] Ms. Sheesley attempts to define the right Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii) violate as "the fundamental liberty interest of private, consensual, sexual relations between adults[.]" She overlooks the critical fact that the challenged statutes address situations when consent is in doubt. She relies on Lawrence v. Texas , in which the United States Supreme Court held a Texas statute criminalizing anal sex between members of the same sex "further[ed] no legitimate state interest which can justify its intrusion into the personal and private life of the individual." 539 U.S. 558, 563, 578, 123 S.Ct. 2472, 2476, 2484, 156 L.Ed.2d 508 (2003). There, the Court identified the right at issue as "involv[ing] two adults who, with full and mutual consent from each other , engaged in sexual practices common to a homosexual lifestyle." Id. at 578, 123 S.Ct. at 2484 (emphasis added). The Court specifically delimited the right it was considering:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused . It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.
Id. (emphasis added).
[¶11] In contrast, the statutes Ms. Sheesley challenges involve individuals situated in relationships where consent might not easily be refused: employees and residents of correctional facilities. Her omission of the specific types of relationships Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii) prohibit runs afoul of the "tradition of carefully formulating the interest at stake in substantive-due-process cases." Washington v. Glucksberg , 521 U.S. 702, 722, 117 S.Ct. 2258, 2269, 138 L.Ed.2d 772 (1997). We do not agree that Lawrence identified a fundamental liberty interest in private, sexual relations between employees and residents of correctional facilities.[4] See Seegmiller v. LaVerkin City , 528 F.3d 762, 770 (10th Cir. 2008) ("[T]he Court has never endorsed an all-encompassing right to sexual privacy under the rubric of substantive due process."); Williams v. Att'y Gen. of Ala. , 378 F.3d 1232, 1236 (11th Cir. 2004) ("Although many of the Court's 'privacy' decisions have implicated sexual matters, the Court has never indicated *836 that the mere fact that an activity is sexual and private entitles it to protection as a fundamental right."). Thus, it is not entitled to any form of heightened judicial review, and the statutes need only survive rational basis scrutiny. Vaughn , 2017 WY 29, ¶ 26, 391 P.3d at 1095.
[¶12] Under the rational basis test, we determine whether the statutes are reasonably related to a legitimate government interest. Id. We find that they are. The Court of Appeals for the Ninth Circuit reached a similar conclusion when considering a vagueness challenge to a state statute prohibiting sexual intercourse with a person "incapable of consent by reason of mental defect":
We address Lawrence only so far as to state that it has no impact on [the appellant's] vagueness claim. The Lawrence Court held that the Due Process Clause of the Fourteenth Amendment protects the right of two individuals to engage in fully and mutually consensual private sexual conduct. The holding does not affect a state's legitimate interest and indeed, duty, to interpose when consent is in doubt.
Anderson v. Morrow , 371 F.3d 1027, 1032-33 (9th Cir. 2004) (emphasis added). Additionally, the State "has an undeniable interest in ensuring the relationship of state prisoners and the state officers who supervise their confinement, as well as institutional order and discipline, is not undermined by sexual contact, consensual or otherwise." Com. v. Mayfield , 574 Pa. 460, 473, 832 A.2d 418 (Pa. 2003) (internal citation omitted). Thus, we hold Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii) are not facially overbroad in violation of the Fourteenth Amendment to the United States Constitution.
II. Was Ms. Sheesley denied her right to due process of law under Article 1, Sections 6, 7, and 36 of the Wyoming Constitution ?
[¶13] Ms. Sheesley also argues Wyo. Stat. Ann. §§ 6-2-304(a)(iii) and 6-2-303(a)(vii)"are overly broad in violation of Article I, sections 6, 7, and 36 of the Wyoming Constitution." The State responds that we should deny review of the Wyoming constitutional challenge because Ms. Sheesley failed to properly present the claim. Although we ultimately conclude Ms. Sheesley has not provided adequate argument and briefing for us to consider her Wyoming constitutional claim, we take this opportunity to clarify what is and is not required of litigants raising claims under the Wyoming Constitution.
[¶14] We subscribe to the view that "state courts cannot rest when they have afforded their citizens the full protections of the federal Constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law." William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights , 90 Harv. L. Rev. 489, 491 (1977). We have repeatedly reminded litigants that "[o]ur state constitution provides protection of individual rights separate and independent from the protection afforded by the U.S. Constitution." O'Boyle v. State , 2005 WY 83, ¶ 23, 117 P.3d 401, 408 (Wyo. 2005) ; see, e.g. , Kovach v. State , 2013 WY 46, ¶ 44, 299 P.3d 97, 111 (Wyo. 2013) ; Saldana v. State , 846 P.2d 604, 624 (Wyo. 1993) (Golden, J., concurring); Vasquez v. State , 990 P.2d 476, 485 (Wyo. 1999). We do so again: "The Wyoming Supreme Court continues to be willing to independently interpret the provisions of the Wyoming Constitution." Saldana , 846 P.2d at 624 (Golden, J., concurring).
[¶15] In his Saldana concurrence, Justice Golden identified six "non-exclusive neutral criteria" relevant to determining whether the Wyoming Constitution extends broader rights to Wyoming citizens than the United States Constitution. 846 P.2d at 622 (Golden, J., concurring). Those factors include: "(1) the textual language; (2) the differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." Id. We disagree with the State, however, that "[a] proper state constitutional analysis should include, at the minimum , examination of" these criteria to justify consideration of the issue on appeal. (Emphasis added.) The State would have us employ a rigid analytical approach *837 before engaging in independent interpretation of the Wyoming Constitution. Although we agree that litigants must "provide[ ] proper argument and briefing using a precise and analytically sound approach" before we will consider a state constitutional claim, O'Boyle , 2005 WY 83, ¶ 22, 117 P.3d at 408, that requirement's purpose is to provide assistance, not to create obstacles to state constitutional analysis. We have never required litigants to, "at the minimum," examine every factor identified in Saldana v. State to properly present a state constitutional claim.
We emphasize that these are "non-exclusive" criteria. The identification of these factors does not mean they are the only criteria for analyzing a state constitutional claim or that they all must be addressed in every case. As stated in State v. Gunwall , 106 Wash.2d 54, 720 P.2d 808 (1986), the case from which [the Saldana factors] were derived, these criteria are relevant to determining whether, in a given situation, a state constitution should be considered as extending broader rights to its citizens than does the United States Constitution. The criteria are aimed at suggesting where counsel might focus his or her argument in cases urging independent state constitutional grounds and helping to insure that when a court relies upon independent state constitutional grounds, the result is based upon well founded legal reasons and not merely the substitution of the particular court's notion of justice for that of duly elected legislative bodies or the United States Supreme Court. Gunwall , at 813. While state constitutional claims need to be thoroughly briefed and discussed and the Gunwall criteria provide an appropriate framework, those criteria are neither compulsory nor exclusive .
O'Boyle , 2005 WY 83, ¶ 24 n.4, 117 P.3d at 408 n.4 (some emphasis added); see also Vasquez , 990 P.2d at 486 ("The criteria listed in Saldana are part of an analytically sound approach to developing our own constitutional theory concerning the rights declared in the Wyoming Constitution, and litigants need not restrict their analysis to distinguishing between the state and federal constitutions.").[5] A precise and analytically sound approach to state constitutional interpretation will likely involve consideration of some of the Saldana factors, and we encourage litigants to rely on authority relevant to them in their analyses. See, e.g. , Robert B. Keiter, The Wyoming State Constitution (G. Alan Tarr ed., Oxford Univ. Press) (2d ed. 2017). Litigants need not engage in a rigid, formulaic analysis to convince us to consider independent state constitutional grounds.
[¶16] Here, however, we find Ms. Sheesley's Wyoming constitutional argument more akin to "[a] grudging parallel citation to a state constitution ... [that seeks] merely to sidestep review by the United [S]tates Supreme Court[.]" Saldana , 846 P.2d at 623. Although she raised the Wyoming constitutional argument below and on appeal,[6] her argument largely echoes her argument under the federal constitution. See, e.g. , ("For the same reasons set forth in Ms. Sheesley's challenge to the overly broad nature of the statutes under the United States Constitution, Ms. Sheesley has standing to challenge the statutes as overly broad under the Wyoming Constitution."). Additionally, she provides no analysis of any of the Saldana factors. To her credit, she does identify relevant *838 Wyoming precedent, Scadden v. State , 732 P.2d 1036 (Wyo. 1987), and argues that it created a stronger liberty interest under the Wyoming Constitution than has been recognized under the United States Constitution. However, we do not agree with her reading of Scadden . First, in Scadden , we did not independently analyze the Wyoming Constitution, and it is unclear whether we relied on the federal constitution or our own in saying the State is limited in regulating sexual relations "by due-process protections of this fundamental and protected liberty." Id. at 1039. Further, Ms. Sheesley's reliance on Scadden suffers the same flaw as did her federal constitutional argument: it fails to account for sexual relationships between individuals in circumstances where consent is in doubt. In fact, Scadden involved individuals situated in such a relationship-an adult coach and his underage student athlete-and we concluded the "appellant's due-process argument [did] not apply." Id. at 1041. Ms. Sheesley offers no argument why we should now hold the Wyoming Constitution independently protects the right she asserts when we had that opportunity in Scadden and did not do so. In sum, Ms. Sheesley has not provided "well founded legal reasons" justifying resort to independent state grounds, and we will not consider the reach of substantive due process under the Wyoming Constitution any further here.[7]
[¶17] Affirmed.

Wyo. Stat. Ann. § 6-2-304(a)(iii), at the time, read:
(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:
...
(iii) The actor subjects a victim to sexual contact under any of the circumstances of W.S. 6-2-302(a)(i) through (iv) or 6-2-303(a)(i) through (vii) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.
Subsection (a)(vii) of Wyo. Stat. Ann. § 6-2-303 refers to sexual contact in circumstances where:
(vii) The actor is an employee, independent contractor or volunteer of a state, county, city or town, or privately operated adult or juvenile correctional system, including but not limited to jails, penal institutions, detention centers, juvenile residential or rehabilitative facilities, adult community correctional facilities or secure treatment facilities and the victim is known or should be known by the actor to be a resident of such facility or under supervision of the correctional system[.]

We expressed some reservation in Gordon that the facial/as-applied distinction is not well-defined, but adhered to it under stare decisis. Gordon , 2018 WY 32, ¶ 12 n.10, 413 P.3d at 1099 n.10.

In addition to a facial challenge on overbreadth grounds, a defendant may facially attack a statute as impermissibly vague. City of Chicago v. Morales , 527 U.S. 41, 52, 119 S.Ct. 1849, 1857, 144 L.Ed.2d 67 (1999). We do not consider vagueness because Ms. Sheesley conceded at Oral Argument that she was not challenging the statutes on vagueness grounds.

There is debate about whether Lawrence identified a "fundamental right" of any sort. Lawrence , 539 U.S. at 594, 123 S.Ct. at 2492 (Scalia, J., dissenting) (criticizing the majority for failing to identify homosexual sodomy as a "fundamental right" or "fundamental liberty interest," as is typical in substantive due process analysis); Matthew Coles, Lawrence v. Texas & the Refinement of Substantive Due Process , 16 Stan. L. & Pol'y Rev. 23, 24 (2005) (arguing Lawrence 's failure to identify a "fundamental right" reflects "an important step in the refinement of due process analysis" that signals the Court's development of a more sophisticated balancing-test approach); LiJia Gong & Rachel Shapiro, Sexual Privacy After Lawrence v. Texas , 13 Geo. J. Gender & L. 487, 496 (2012) (noting that only "a single American jurist at the appellate level, Judge Barkett of the 11th Circuit, has accepted the argument that Lawrence establishes a fundamental right").

We acknowledge that the Saldana concurrence quoted a Washington case that described the six criteria as "minimum" requirements. Saldana , 846 P.2d at 623 (quoting State v. Wethered , 110 Wash.2d 466, 755 P.2d 797, 800-01 (Wash. 1988) ). However, the case from which the six Saldana factors originate, Gunwall , 720 P.2d 808, did not describe them as "minimum" requirements, and our precedent makes clear that those criteria "are neither compulsory nor exclusive." O'Boyle , 2005 WY 83, ¶ 24 n.4, 117 P.3d at 408 n.4.

It is usually essential to raise state constitutional claims in the lower court to warrant our review on appeal. Davis v. State , 2018 WY 40, ¶ 32, 415 P.3d 666, 678 (Wyo. 2018). "Our precedent is clear that an argument may not be made for the first time on appeal[,]" id. (quoting Gumpel v. Copperleaf Homeowners Ass'n, Inc. , 2017 WY 46, ¶ 32 n.7, 393 P.3d 1279, 1291 n.7 (Wyo. 2017) ), with some exceptions. See, e.g. , Crofts v. State ex rel. Dep't of Game & Fish , 2016 WY 4, ¶ 24, 367 P.3d 619, 625 (Wyo. 2016) ("[W]e will recognize an exception to the rule 'for an issue that is of such a fundamental nature that it must be considered.' ") (emphasis in original) (quoting Kordus v. Montes , 2014 WY 146, ¶ 10, 337 P.3d 1138, 1141 (Wyo. 2014) ).

That is not to say we agree with the State that because the Wyoming constitutional provisions Ms. Sheesley relies on are "largely the same as the United States Constitutional provisions, the natural inference is that the framers of the Wyoming Constitution thought they were incorporating the same set of rights." See Vasquez , 990 P.2d at 485 (stating that even if the search and seizure provisions of the state and federal constitutions were identical, that would not demonstrate an intent that the Wyoming Constitution provides the same protection as the federal provision); Brennan, Jr., supra , at 495 ("Of late, ... more and more state courts are construing state constitutional counterparts of provisions of the Bill of Rights as guaranteeing citizens of their states even more protection than the federal provisions, even those identically phrased."). The scope of substantive due process protections under the Wyoming Constitution remains an open question, despite textual similarity between it and the federal constitution.